UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

versus                                                  DOCKET No. 17-201

LILBEAR GEORGE                       SECTION "I"

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>MEMORANDUM IN SUPPORT OF MOTION TO DECLARE THE FEDERAL DEATH PENALTY ACT AND THE DEATH PENALTY UNCONSTITUTIONAL</u>

Defendant Lilbear George, by and through undersigned counsel, respectfully moves this Court to strike the Federal Death Penalty Act (FDPA), because it violates the Fifth and Sixth Amendments of the Constitution and for the following reasons:

<u>ORIGINS OF THE FEDERAL DEATH PENALTY ACT</u>

Enacted in 1994 as 18 U.S.C. §§ 3591-3598, the FDPA set forth procedures for the imposition of the death penalty purporting to safeguard the to due process and confrontation rights of the accused. These procedures were a response to concerns expressed by the Supreme Court about arbitrariness in the application of the death penalty. See <u>Furman v. Georgia</u>, 408 U.S. 238, 253 (1972) (where Justice Douglas expressed the Court's unease with "the uncontrolled discretion of judges or juries . . . .").

1

## ITS FLAWED REALIZATION

1. The FDPA fails to provide a reasoned choice in sentencing and violates the defendant's Fifth Amendment right to Due Process and his Sixth Amendment right to trial by an impartial jury

When the Supreme Court reinstated the death penalty in 1976, it required that the jury's discretion be guided and limited in order to "minimize the risk of wholly arbitrary and capricious action." Gregg v. Georgia, 428 U.S. 153, 189 (1976).  The central components of this "guided discretion" included objectively narrowing the pool of death eligible defendants and implementing individualized sentencing where the defendant's character and background were put into evidence and the jury was given unfettered discretion to exercise mercy.  Such a balance of discretion and objective reliability has proved unattainable, however, as is evidenced by the findings of the Capital Jury Project (CJP).  Begun in 1991as a means for gauging the success of guided discretion post-Gregg, the CJP is an ongoing study about jurors' decision-making processes.  The CJP has thus far conducted in-depth interviews with 1198 jurors who served on capital cases in fourteen states, and the empirical data has shown that the arbitrariness which the Supreme Court found unconstitutional in Furman v. Georgia is still a dominant characteristic in jurors' capital sentencing decisions. 408 U.S. 238, 295 (1972).  For example, many jurors believe that the death penalty is a mandatory sentence for murder, regardless of the jury instructions; many jurors presume that a guilty

verdict mandates the death penalty; and, most disturbingly, the very fact of death-qualifying a jury leads to a "presumption of death"; even indecision tends to be resolved in favor of death.[1]

While Congress attempted to prevent such arbitrariness with the FDPA, recent judicial decisions have concluded that the FDPA operates in an arbitrary and capricious manner. The Connecticut Supreme Court recently held that while the FDPA seeks to narrow defendants' death penalty eligibility, it nonetheless gives juries nearly unfettered discretion in sentencing. State of Conn. v. Santiago, 318 Conn. 1, 25, 122 A.3d 1 (Conn. 2015). After conducting nearly two weeks of evidentiary hearings on the constitutionality of the death penalty, a Vermont federal district court found that the death penalty is arbitrarily applied and that the FDPA "falls short of the standard required in Furman . . . and in Gregg . . . for identifying defendants who meet objective criteria for imposition of the death penalty." United States v. Fell, 5:01-cr-12-01 (D. Vt. Dec. 13, 2016). Although that court subsequently upheld the constitutionality of the FDPA, citing Supreme Court precedent, the judge noted that arbitrariness and bias "play leading roles" in its operation. *Id.* at 3. The Washington Supreme Court ruled that the death penalty was arbitrary and racially biased. State of Washington. v. Gregory, 427 P.3d 621 (2018).

---

[1] William J. Bowers, *The Capital Jury Project: Rationale, Design and Preview of Early Findings*, 70 IND. L.J. 1043, 1054, 1074 (1995).

2. The Federal Death Penalty is unevenly applied and discriminates against minorities

As is highlighted in these recent decisions, and well supported by empirical evidence, invidious racial bias informs both the prosecution's decision to seek a death sentence and the jury's decision to select it. By 1994 – barely six years after the return of a "modern" federal death penalty – obvious racial disparities surfaced in the Justice Department's prosecution of federal death penalty cases. In response, the House Subcommittee on Civil and Constitutional Rights initiated an investigation and concluded as follows:

> Race continues to plague the application of the death penalty in the United States. On the state level, racial disparities are most obvious in the predominant selection of cases involving white victims. On the federal level, cases selected have almost exclusively involved minority defendants.[2]

By 2004, 75 per cent of defendants approved for capital prosecution were minorities, and 73 per cent of defendants on death row were minorities, hardly an improvement.[3] Evidence of the race-effect of the death penalty is particularly probative in states of the former Confederacy. Santiago, 318 Conn. at 81. Louisiana fares poorly in this statistic, having demonstrated a consistent racial bias

---

[2] *Racial Disparities in Federal Death Penalty Prosecutions 1988-1994*, Staff Report by the Subcommittee on Civil and Constitutional Rights, Committee on the Judiciary, 103rd Congress, 2nd Sess., Mar. 1994, *available at* https://www.ncjrs.gov/pdffiles1/153840.pdf.

[3] Kevin McNally, *Race and the Federal Death Penalty: A Nonexistent Problem Gets Worse*, 53 DEPAUL L. REV. 1617 (2004).

4

in state death penalty convictions.[4]  Despite the goals of the FDPA, racial inequalities remain endemic to prosecution, conviction, and sentence of death, and therefore violates both the Eight Amendment's prohibition against arbitrariness as well as the Fifth Amendment's right to due process of law.

> 3. The Department of Justice's death penalty protocol is shrouded in secrecy and violates the defendant's Sixth Amendment right to public trial and his Fifth Amendment right to Due Process

In 2014, the Department of Justice included a revised death penalty protocol in the United States Attorney's Manual at sections 0-10.010 to 9-10.200.  Attorney General Eric Holder promoted the amendments as expediting the process for determining whether a case was death eligible; the mechanism was "pre-indictment review."[5]  This expedited decision-making process is limited to DOJ officials and their investigating agencies.  *U.S. Attorney's Manual,* Section 9-10.050.  The government's interest in hastening the determination of death-penalty eligibility through a highly confidential process which excludes both the defendant and defense counsel flies in the face of the rationale behind the Sixth Amendment's guarantee of a public trial.

---

[4] Frank R. Baumgartner & Tim Lyman, *Louisiana Death-Sentenced Cases and Their Reversals, 1976-2015*, VII, THE J. OF RACE, GENDER AND POVERTY 58, 74 (2016).

[5] Attorney General Eric Holder, *Memorandum for All Federal Prosecutors: Revisions to Death Penalty* (April 7, 2014) at 1, https://www.justice.gov/oip/foialibrary/ag_memo_revisions_death_penalty_protocol/download.

This type of proceeding, where the prosecutor decides to seek the death sentence in a closed meeting, awakens what Justice Black called the "traditional Anglo-American distrust for secret trials . . . [which] symbolized a menace to liberty." In re Oliver, 333 U.S. 257, 268-69 (1948). Prior to the 2014 changes to the DOJ's death protocol, one witness at a Senate Judiciary Committee hearing noted with concern that the FDPA already amounted to an "attempt to create an airtight regime of secrecy over the entire deliberative process."[6] By further "streamlining" and closeting the government's decision-making procedure, the DOJ's administration of the FDPA violates both the Sixth Amendment right to public trial and the Fifth Amendment's right to a fair, orderly, and just judicial proceeding.

    4.    The relaxed evidentiary standard of the FDPA violates the defendant's Fifth Amendment right to Due Process and his Sixth Amendment rights to Confrontation and cross-Examination

The FDPA runs afoul of the Confrontation Clause of the Sixth Amendment by permitting hearsay evidence to establish an aggravating factor. The government may present hearsay evidence "regardless of its admissibility under the rules governing admission of evidence at criminal trials . . . ." 18 U.S.C. § 3593(c). The statute provides exceptions, namely the risk of creating prejudice, confusion, or

---

[6] United States Senate, Committee on the Judiciary, *Oversight of the Federal Death Penalty, June 27, 2007*. 110th Cong. GPO, No. 110-43.

misleading the jury.  *Id.*  However, the Supreme Court's ruling in Apprendi v. New Jersey and its progeny compels the conclusion that the aggravating factors function as elements, because they are sentence "enhancers," and therefore require that a jury find the existence of an aggravating factor beyond a reasonable doubt.  530 U.S. 466 (2000).  In Ring v. Arizona, the Court applied Apprendi to a state law capital case and reversed a death sentence, holding that aggravating factors must be found by a jury beyond a reasonable doubt. 536 U.S. 584 (2002).

The Supreme Court's holding in Ring, read together with its holding in Crawford v. Washington renders section 3593(c) unconstitutional, because it violates the Confrontation Clause of the Sixth Amendment.  541 U.S. 36 (2004). Writing for the majority in Crawford, Justice Scalia held that testimonial hearsay evidence "deemed reliable by a judge is fundamentally at odds with the right of confrontation." *Id.* at 61.  The Court defined "testimonial hearsay" as including affidavits, custodial examinations, prior testimony where the defendant had no opportunity to cross-examine, depositions, confessions, or statements made to the police.  *Id.* at 51-52.  The FDPA's relaxed evidentiary standard deprives the defendant of his Sixth Amendment confrontation rights by allowing the trial judge to admit testimonial hearsay.  In light of Crawford, the Fifth Circuit held hearsay was admissible at a sentencing proceeding, but warned that, "Our conclusion . . . does not doom defendants to being sentenced to death on the basis of unreliable

hearsay evidence." United States v. Fields, 483 F.3d 313, 337 (5th Cir. 2007). The dissent observed that, "The value of confrontation is never more vivid than when the state puts a defendant to death based on testimony he had no opportunity to challenge." Id. at 362-63. By allowing the government to present aggravating factors, which function as elements because they extend the maximum sentence, the FDPA undermines the heightened scrutiny and reliability required of evidence presented in capital cases. Woodson v. North Carolina, 428 U.S. 280 (1976). The death penalty is fundamentally and qualitatively different from every other punishment because of its severity and finality and is "unique . . . in its absolute renunciation of all that is embodied in our concept of humanity." Furman v. Georgia, 408 U.S. 238, 306 (1972) (Stewart, J., concurring). The Supreme Court recognized this difference, requiring that aggravating factors must be proven beyond a reasonable doubt, which conflicts with the FDPA's relaxed evidentiary standard.

5. The Federal Death Penalty is contrary to evolving standards of decency

The infliction of the death penalty suffers from the same procedural infirmities and impermissibly discriminatory effects as the FDPA. Justice White set forth a test for Eighth Amendment "cruel and unusual punishments": 1) when the punishment serves no acceptable goal except for the infliction of pain and

suffering; 2) when the punishment is disproportional to the crime in severity; 3) when the punishment is not informed by objective factors, particularly public and legislative attitudes and juries' sentencing decisions. Coker v. Georgia, 433 U.S. 584, 592 (1977). Because the death penalty leads to the execution of innocent people, it fails every prong of this test. The Second Circuit in United States v. Quinones had two important holdings in this regard, one procedural and one substantive. 313 F.3d 49 (2d Cir. 2002). First, the Court found that it had jurisdiction to hear a constitutional challenge to the FDPA prior to trial. *Id.* at 52. Second, after lengthy consideration, the Court ruled that the capital punishment violated the Eighth Amendment because it denied the defendant's "fundamental right to the opportunity for exoneration over the course of one's natural life." *Id.* at 66-67. The federal death penalty not only denies this right of future exoneration, it does so by presenting hearsay testimony to a jury operating under the "presumption of death."

   6. The discretion to impose death is not sufficiently limited as illustrated by the facts of this case.

The Eighth Amendment requires that the government meaningfully narrow the class of persons for whom death is an available penalty. Godfrey v. Georgia, 446 U.S. 420, 427 (1980). Quoting Justice White's concurrence in Furman, the Court wrote that, "A capital sentencing scheme must, in short, provide a

'meaningful basis for distinguishing the few cases in which [the penalty] is imposed form the many cases in which it is not." *Id.* This means that the death penalty is available only for the most severe murders and for the most culpable offenders. See Kennedy v. Louisiana, 554 U.S. 407, 420 (2000) (stating "capital punishment must be limited to those offenders who commit 'a narrow category of the most serious crimes' and whose extreme culpability makes them 'the most deserving of execution'" when reaffirming unconstitutionality of death penalty for nonhomicide crimes (citations omitted)); Enmund v. Florida, 458 U.S. 782 (1982) (holding death penalty unconstitutional for one who does not kill, intend to kill, or intend for lethal force to be used); Zant v. Stephens, 462 U.S. 862, 877 (1983) (stating the Constitution requires that "an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder").

Although in the instant case, Mr. George was an alleged participant in a robbery which resulted in a death, Mr. George is not being charged with killing Mr. Trochez. See NOI Doc. 147. Thus, by the government's own calculated admission, Mr. George falls short of the standard of "most deserving of execution." The two factors of Mr. George's alleged role in an armored car robbery and his alleged motivation of pecuniary gain, if proven by the government,

would place him outside of the kind of criminal conduct which the Supreme Court considers to be proportionately punished by the death penalty. Indeed, the Supreme Court has held that the death penalty is disproportionate when the crime was not *intended* to result in the death of the victim. Kennedy, 554 U.S. at 420.

## CONCLUSION

The federal death penalty, as it is codified in the FDPA, is inherently flawed and does not meet constitutional standards. The FDPA is procedurally flawed in its failure to safeguard the reliability of evidence, by allowing the admission of evidence which does not conform to fundamental rules of confrontation and cross-examination consistent with an adversarial proceeding. The FDPA fails to properly guide both prosecutorial and juror discretion, by permitting secret DOJ proceedings to determine eligibility and by predisposing juries to death sentences. The FDPA allows for the continued unequal application of the death penalty to racial minorities as demonstrated by its impermissibly disparate effect on minorities. Finally, a death sentence risks the execution of innocent people, without allowance for exoneration over the course of a natural life. For the reasons enumerated above, Mr. George moves this Court to strike the FDPA and the death penalty as unconstitutional.

Respectfully submitted:

/s/ Bruce G. Whittaker

_____

Bruce G. Whittaker, No. 08339
1215 Prytania Street, Suite 332
New Orleans, LA 70130
(504) 554-8674
bruce@whittakerlaw.com

Jerrod E. Thompson-Hicks, No. 32729
Federal Public Defender (New Orleans)
500 Poydras Street, Room 318
New Orleans, LA 70130
(504)-589-7931
jerrod_thompson-hicks@fd.org

Attorneys for Lilbear George

CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served upon counsel by filing under the ECF system on the date of filing, November 19, 2018.

/s/ Bruce G. Whittaker
Bruce G. Whittaker