# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 17-201 |
| LILBEAR GEORGE | SECTION I |

### ORDER & REASONS

Before the Court is defendant Lilbear George's ("George") motion[1] to strike the non-statutory aggravating factors from the government's notice of intent to seek the death penalty. For the following reasons, the motion is denied.

### I.

The allegations in the superseding indictment are familiar to the Court and were summarized in a previous order.[2] On August 31, 2018, the government filed its notice of intent to seek the death penalty as to George.[3] The notice of intent states that the government "believes the circumstances of the offenses charged in Count 3 of the Superseding Indictment are such that in the event of a conviction, a sentence of death is justified . . . , and that [the government] will seek the sentence of death for this offense."[4] Count three alleges that George and several of his codefendants, "aiding and abetting each other, did knowingly use, carry, brandish, and discharge firearms during and in relation to crimes of violence . . . , and in the course thereof

---

[1] R. Doc. No. 178.
[2] *See* R. Doc. No. 195, at 1–2.
[3] *See generally* R. Doc. No. 147.
[4] *Id.* at 1.

caused the death of Hector Trochez through the use of firearms," and that the killing was murder because it was committed in perpetration of a robbery.[5]

The notice of intent includes seven aggravating factors that the government intends to prove at the sentencing hearing to justify a death sentence for George.[6] Five of the aggravating factors are non-statutory: victim impact, lack of remorse, other criminal conduct (a separate armed robbery), other criminal conduct (drug trafficking with a firearm), and other criminal conduct (substantial planning and premeditation with respect to the armed robbery at issue in this case).[7]

## II.

George moves the Court to strike all five non-statutory aggravating factors from the notice of intent. He does not argue the impermissibility of any particular factor. Rather, George argues broadly that the sentencing jury's consideration of non-statutory aggravating factors is improper for three reasons. The Court will address them in turn.

### A.

George first argues that a plain reading of the Federal Death Penalty Act (the "FDPA"), 18 U.S.C. §§ 3591–3598, reveals that the law does not authorize the jury's consideration of non-statutory aggravating factors.[8] His argument rests on a

---

[5] *See* R. Doc. No. 23, at 3.
[6] *See generally* R. Doc. No. 147.
[7] *Id.* at 2–4.
[8] R. Doc. No. 178-1, at 4. George acknowledges the "victim impact" factor as a "possible exception." *Id.*; 18 U.S.C. § 3593(a) ("The factors for which notice is provided . . . may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the

purported conflict between two sections of the FDPA—§ 3592 and § 3591. Section 3592 enumerates aggravating factors that the sentencing jury may consider when determining whether a death sentence is justified. For homicide cases, the FDPA lists sixteen aggravating factors. *See* § 3592(c). In addition to the sixteen statutory aggravating factors, the FDPA provides that "[t]he jury . . . may consider whether any *other* aggravating factor for which notice has been given exists." § 3592(c) (emphasis added). Since the FDPA's inception, courts have permitted sentencing juries to consider non-statutory aggravating factors, so long as notice of such factors has been provided.

Section 3591 states that a defendant who has been found guilty of certain offenses "shall be sentenced to death if, after consideration of the factors *set forth* in section 3592[,] . . . it is determined that imposition of a death sentence is justified." § 3591(a) (emphasis added). According to George, because non-statutory aggravating factors are not "set forth" in § 3592, the sentencing jury may not consider them in accordance with the procedure provided in § 3591.[9]

George acknowledges that at least one federal district court has rejected this argument as "hyper-literal." *See United States v. Nguyen*, 928 F. Supp. 1525, 1535 (D. Kan. 1996). However, numerous other district courts have also concluded that George's reading of the FDPA is without merit. *See, e.g., United States v. Montgomery*, 10 F. Supp. 3d 801, 821 (W.D. Tenn. 2014) (explaining that "§ 3591(a) does not limit

---

victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information.").
[9] R. Doc. No. 178-1, at 5.

3

consideration *only* to the aggravating factors set forth in § 3592, although Congress could have done so"); *United States v. Williams*, No. 08-70, 1335599, at *20 (M.D. Pa. Mar. 29, 2013) ("[N]on-statutory aggravating factors serve the constitutional need for individualized sentencing because it would be impossible to identify every possible relevant consideration in any given capital case."); *United States v. Diaz*, No. 05-167, 2007 WL 656831, at *16 (N.D. Cal. Feb. 28, 2007) (noting that § 3593(e) "requires the jury to weigh 'all the aggravating factor or factors found to exist'"); *United States v. Davis*, No. 01-282, 2003 WL 1837701, at *14 (E.D. La. Apr. 9, 2003) (Vance, J.) ("In context, 'set forth' simply means 'contained in' or 'stated in,' and it does not require a particular level of specificity."). More importantly, the Fifth Circuit has rejected George's "tortured reading of the statute," holding that, "[w]hen the statute is read as a coherent whole, the two provisions are not in tension, because § 3592 adequately 'sets forth' the non-statutory aggravating factors by providing that the jury may consider them." *United States v. Robinson*, 367 F.3d 278, 293 (5th Cir. 2004).

**B.**

George next argues that non-statutory aggravating factors do not "constitutionally limit and guide the discretion of the jury," which allows for arbitrary and capricious death sentences in violation of the Eighth and Fourteenth Amendments.[10] As the Eighth Circuit has explained, however, non-statutory aggravating factors are not intended to limit and guide the jury's discretion. *United*

---

[10] *Id.* at 6.

4

*States v. Allen*, 247 F.3d 741, 757 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002).

To render a defendant eligible for the death penalty, the government must prove beyond a reasonable doubt one of four mental states, also known as statutory intent factors, provided in § 3591(a)(2) and at least one of sixteen statutory aggravating factors provided in § 3592(c). *United States v. Bourgeois*, 423 F.3d 501, 506–07 (5th Cir. 2005).[11] The statutory intent and statutory aggravating factors "fulfill the role of limiting and guiding a jury's discretion in making the eligibility decision." *Allen*, 247 F.3d at 757. By contrast,

> [t]he primary purpose of the nonstatutory aggravating factors . . . is to allow for the individualized determination of whether a death sentence is justified for a particular defendant; that is, they help to inform the selection decision.

*Id.* (citing *Tuilaepa v. California*, 512 U.S. 967, 971–72 (1994)).

"The framework of the FDPA passes constitutional muster because it does not allow imposition of the death penalty unless the jury first finds at least one statutory aggravating circumstance." *Id.* at 758 (emphasis omitted). The non-statutory aggravating factors are not considered during the eligibility phase. They do not come into play until the jury has determined that the defendant is eligible to receive a death sentence; then they are used as part of the jury's weighing process—to determine whether a death sentence is appropriate based on the circumstances of the

---

[11] The government must also prove that the defendant was not younger than 18 years of age at the time of the offense. 18 U.S.C. § 3591(a).

5

crime and the defendant's characteristics. *See United States v. Davis*, No. 01-282, 2003 WL 1837701, at *12 (E.D. La. Apr. 9, 2003) (Vance, J.).

There is "no constitutional infirmity with the FDPA's permitting the prosecution to propose nonstatutory aggravating factors to fit the particular circumstances of a crime," which "assist[s] the jury in determining whether the death penalty should be imposed upon a defendant already determined to be eligible for that ultimate punishment." *Allen*, 247 F.3d at 758. The Fourth Circuit has similarly rejected George's argument. *See United States v. Higgs*, 353 F.3d 281, 320 (4th Cir. 2003) ("[W]e reject the contention that the FDPA is unconstitutional merely because it allows the sentencing jury to weigh nonstatutory aggravating factors when deciding whether to impose the sentence of death upon a defendant convicted of a death-eligible offense.").

Furthermore, although George characterizes the government's ability to present non-statutory aggravating factors to the jury as "unconstrained,"[12] "the prosecution does not have *carte blanche* in devising non-statutory aggravating factors." *United States v. Jones*, 132 F.3d 232, 239 (5th Cir. 1998).

> At least four limitations guide the prosecution in exercising its delegated authority. First, the statute limits the scope of aggravating factors to those for which prior notice has been given by the prosecution. *See* 18 U.S.C. § 3593(a). Second, the death penalty jurisprudence devised by the Supreme Court guides the prosecution in formulating nonstatutory aggravating factors. For example, due process requires that information submitted as aggravating genuinely narrow the class of persons eligible for the death penalty. . . . Third, the district court functions as a gatekeeper to limit the admission of useless and impermissibly prejudicial information. *See* 18 U.S.C. § 3593(c). And fourth, the

---

[12] R. Doc. No. 178-1, at 7.

requirement that the jury find at least one statutory aggravating factor beyond a reasonable doubt before it may consider the non-statutory factors further limits the delegated authority. *See* 18 U.S.C. § 3593(d).

*Id.* at 239–40 (citation omitted). "As long as the statute prevents an arbitrary death sentence, the inclusion of relevant nonstatutory aggravating factors at the sentencing stage does not render the death penalty scheme unconstitutional." *Id.* at 241. And the Fifth Circuit has concluded that "[t]he FDPA provides sufficient safeguards to prevent the arbitrary imposition of the death penalty." *Id.*; *cf. United States v. McCullah*, 76 F.3d 1087, 1106–07 (10th Cir. 1996) ("The Supreme Court has dealt with the issue of non-statutory aggravating factors in state capital punishment statutes and has held the use of non-statutory aggravating factors permissible.").

### C.

Finally, George argues that permitting the government to define non-statutory aggravating facts after the alleged crime was committed but before trial violates the Constitution's *Ex Post Facto* Clause.[13] A statute only violates the *Ex Post Facto* Clause "if it retroactively 'effects [a] change in the definition of [a defendant's] crime' or 'increases the "punishment" attached to [the defendant's] crime.'" *Wallace v. Quarterman*, 516 F.3d 351, 354 (5th Cir. 2008) (quoting *California Dep't of Corr. v. Morales*, 514 U.S. 499, 505 (1995)).

George argues that § 3592 of the FDPA "permits the prosecution to manufacture out of whole cloth aggravating factors to be applied retroactively to crimes committed before the aggravating factors are identified," depriving defendants

---

[13] *Id.* at 8.

7

of their right to notice and fair warning regarding what constitutes punishable conduct.[14] He relies in part on the United States Supreme Court's opinion in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in which the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" is the "functional equivalent of an element of a greater offense" that "must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 494 n.19. Although George's motion is less than clear, he appears to argue that non-statutory aggravating factors are functionally equivalent to elements of a capital crime and, consequently, they change the definition of such crime or increase the attached punishment in such a way that violates the *Ex Post Facto* Clause.

As previously explained, to render a defendant eligible for the death penalty under the FDPA, the government must prove beyond a reasonable doubt one statutory intent factor and at least one statutory aggravating factor. *Bourgeois*, 423 F.3d at 506–07. These eligibility factors are functionally "elements" of a capital crime. *See United States v. Cheever*, 423 F. Supp. 2d 1181, 1207–08 (D. Kan. 2006) ("[E]ven accepting for sake of argument defendant's conclusion that *Ring* created a new offense of federal capital murder . . . , the 'elements' of such a crime would at most include one of the gateway intent factors and one statutory aggravating factor.").[15]

---

[14] *Id.*

[15] George acknowledges that both the Fourth and Eighth Circuits have rejected the argument that non-statutory aggravating factors are "elements" of a crime. R. Doc. No. 178-1, at 9. He contends, however, that the Supreme Court's recent opinion in *Hurst v. Florida*, 136 S. Ct. 616 (2016), represents a change in the law. *Id.* at 9–10. As an initial matter, *Hurst* did not involve an *ex post facto* challenge. Furthermore, nothing in *Hurst* indicates that the Supreme Court intended to alter the law as it is

8

By contrast, although non-statutory aggravating factors may increase the possibility that the jury recommends the death penalty, they are only presented to the jury *after* the defendant has been found eligible for the death penalty: they "are neither sufficient nor necessary under the FDPA for a sentence of death." *United States v. Purkey*, 428 F.3d 738, 749 (8th Cir. 2005); *see Cheever*, 423 F. Supp. 2d at 1207–08 (explaining that, after the jury finds the existence of a statutory intent and statutory aggravating factor, "a defendant is eligible for the death penalty, and the penalty that he faces cannot be increased any further").[16]

Non-statutory aggravating factors are not, and cannot, be used to determine that the death penalty may be imposed; therefore, they neither change the definition of an underlying capital crime nor increase a defendant's possible penalty. *See Higgs*, 353 F.3d at 322 (holding that, because non-statutory aggravating factors "are weighed by the jury to make the individualized determination to impose the death sentence upon a defendant who has already been found eligible" for the death penalty, they do not violate the *Ex Post Facto* Clause); *Allen*, 247 F.3d at 759 (holding that the FDPA is not an *ex post facto* law "proposing nonstatutory factors to the jury does not

---

set forth in *Apprendi* and *Ring v. Arizona*. (In *Ring v. Arizona*, 536 U.S. 584, 589 (2002), the Supreme Court applied its holding in *Apprendi* to capital cases.) Contrary to George's assertions, *Hurst* does not make non-statutory aggravating factors the functional equivalent of an element of a greater offense.

[16] Indeed, because non-statutory aggravating factors do not render a defendant eligible for the death penalty, the Fifth Circuit has held that, unlike statutory aggravating factors, non-statutory aggravating factors do not need to be charged by indictment. *Bourgeois*, 423 F.3d at 507; *see also United States v. Brown*, 441 F.3d 1330, 1368 (11th Cir. 2006) ("[A] non-statutory aggravating factor is not one of those 'facts legally essential to the punishment' that must be included within the indictment.") (citation omitted).

9

in any way alter the definition of the underlying crime . . . , nor does it increase the punishment"). By their very nature, non-statutory aggravating factors cannot violate the *Ex Post Facto* Clause.[17]

### III.

Accordingly,

**IT IS ORDERED** that the motion to strike the non-statutory aggravating factors from the government's notice of intent to seek the death penalty is **DENIED**.

New Orleans, Louisiana, January 28, 2019.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[17] Numerous courts have rejected the argument that permitting the United States Department of Justice to define non-statutory factors after the crime has been committed violates the Constitution's ban on *ex post facto* laws. *See, e.g.*, *United States v. Green*, No. 06-19, 2008 WL 4000870, at *17–18 (W.D. Ky. Aug. 26, 2008); *United States v. Regan*, 228 F. Supp. 2d 742, 749 (E.D. Va. 2002); *United States v. Llera Plaza*, 179 F. Supp. 2d 444, 455–56 (E.D. Pa. 2001); *United States v. McVeigh*, 944 F. Supp. 1478, 1486 (D. Colo. 1996); *Cheever*, 423 F. Supp. 2d at 1207–08; *Montgomery*, 10 F. Supp. 3d at 820–21.