UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 17-201 |
| LILBEAR GEORGE | SECTION I |

## ORDER & REASONS

Before the Court is defendant Lilbear George's ("George") motion[1] to declare the Federal Death Penalty Act and the death penalty unconstitutional.[2] For the following reasons, the motion is denied.

### I.

On August 31, 2018, the government filed its notice of intent to seek the death penalty as to George.[3] Under the Federal Death Penalty Act (the "FDPA"), 18 U.S.C. §§ 3591–3598, "conviction of an offense punishable by death is followed by a separate sentencing hearing which involves both an eligibility and selection phase." *United States v. Ebron*, 683 F.3d 105, 149 (5th Cir. 2012). To render a defendant eligible for the death penalty, the government must prove beyond a reasonable doubt one of four mental states, also known as statutory intent factors, provided in § 3591(a)(2) and at

---

[1] R. Doc. No. 181.
[2] With the Court's approval, the government filed a singular response to the present motion and a motion filed by one of George's codefendants, Chukwudi Ofomata ("Ofomata"). *See* R. Doc. No. 225, at 1; R. Doc. No. 183. To the extent that George and Ofomata's arguments overlap, and Ofomata's briefing on any argument is more extensive, the Court adopts the analysis in its order ruling on Ofomata's motion.
[3] *See generally* R. Doc. No. 147.

least one of sixteen statutory aggravating factors provided in § 3592(c). *United States v. Bourgeois*, 423 F.3d 501, 506–07 (5th Cir. 2005).[4]

Once the defendant becomes eligible for the death penalty, the selection phase begins, during which the government may attempt to prove the existence of additional factors in support of its position that the death penalty should be imposed. *See* § 3593(c). Similarly, the defendant may attempt to prove the existence of mitigating factors to dissuade the sentencing jury from recommending a death sentence. *Id.* The jury then weighs the proven aggravating factors against any proven mitigating factors to determine if a death sentence is appropriate. § 3593(e).

## II.

George moves the Court to declare both the death penalty, generally, and the FDPA, specifically, unconstitutional. In support of his motion, he makes several arguments, many of which are foreclosed by Fifth Circuit precedent—which the Court will address in turn.

## A.

George first argues that the FDPA fails to provide jurors with a structure that permits them to make a reasoned choice in sentencing, violating both a defendant's Fifth Amendment right to due process and a defendant's Sixth Amendment right to trial by an impartial jury.[5] In *Furman v. Georgia*, 408 U.S. 238, 239–40 (1972), the United States Supreme Court struck down states' capital-sentencing schemes as

---

[4] The government must also prove that the defendant was not younger than 18 years of age at the time of the offense. 18 U.S.C. § 3591(a).
[5] R. Doc. No. 181-1, at 2.

2

cruel and unusual.[6] *Furman* concluded that "state capital-sentencing schemes allowing the death penalty to be 'wantonly and . . . freakishly imposed' by permitting unbridled discretion in sentencing violated the Eighth and Fourteenth Amendments." *Nelson v. Quarterman*, 472 F.3d 287, 293 (5th Cir. 2006) (quoting *Furman*, 408 U.S. at 310 (Stewart, J., concurring)).

*Furman* effectively abolished the death penalty as it was administered in the United States at that time.[7] In response, states revised their death penalty statutes to restrict the classes of death-eligible defendants and channel sentencing jurors' discretion. *Id.* at 293.

> The immediate post-*Furman* Supreme Court cases addressing [Texas's] and other sentencing schemes attempted to strike a balance between satisfying two competing constitutional requirements—the requirement of "individualized sentencing" that takes into account the unique facts of each case and each defendant, and the requirement of preventing the arbitrary imposition of the death penalty that can result from giving the sentencer unfettered discretion.

*Id.*

Four years after *Furman*, the Supreme Court revived the death penalty, holding that it was not *per se* unconstitutional. *See Gregg v. Georgia*, 428 U.S. 154, 195 (1976). The Supreme Court explained that "the concerns expressed in *Furman* that the penalty of death not be imposed in an arbitrary or capricious manner can be

---

[6] *Furman* was a one-paragraph *per curiam* opinion; the Supreme Court could not agree on the reasoning. Five justices wrote separate concurring opinions, and four justices wrote their own dissents.

[7] Carol S. Steiker & Jordan M. Steiker, *Sober Second Thoughts: Reflections on Two Decades of Constitutional Regulation of Capital Punishment*, 109 HARV. L. REV. 355, 357 (1995).

3

met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance." *Id.* To comply with federal constitutional requirements, a capital sentencing scheme must: "(1) rationally narrow the class of death-eligible defendants; and (2) permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime." *See Kansas v. Marsh*, 548 U.S. 163, 173–74 (2006). As the government correctly notes, the FDPA satisfies the foregoing parameters.

With respect to the narrowing requirement:

[T]he FDPA requires the jury first to find that the defendant had the requisite intent. 18 U.S.C. § 3591. The FDPA further narrows the jury's discretion with the requirement [that] the jury find at least one statutory aggravating factor prior to recommending the death penalty. *See* 18 U.S.C. § 3592(c). Thus, the FDPA narrows the jury's discretion through the findings of intent and aggravating factors.

*United States v. Jones*, 132 F.3d 232, 248–49 (5th Cir. 1998); *see also United States v. Aquart*, 912 F.3d 1, 100–03 (2d Cir. 2018) (holding that the FDPA's procedures "adequately channel the sentencer's discretion") (citations omitted); *United States v. Sampson*, 486 F.3d 13, 24 (1st Cir. 2007) ("[T]he FDPA fully meets the requirements of guided discretion, suitably directing and limiting the leeway afforded to the decisionmakers."); *United States v. Webster*, 162 F.3d 308, 355 (5th Cir. 1998) (characterizing § 3591(a) as a "gatekeeping function").

Then, to ensure that sentencing is reasoned and individualized, "the jury decides whether the aggravating factors sufficiently outweigh statutory or non-statutory mitigating factors to warrant a death sentence or, absent mitigating factors,

whether the aggravators alone warrant that sentence." *United States v. Davis*, 609 F.3d 663, 673 (5th Cir. 2010); *see also United States v. Davis*, No. 01-282, 2003 WL 1837701, at *12 (E.D. La. Apr. 9, 2003) (Vance, J.) ("Consideration of aggravating and mitigating factors is the means by which the jury takes into account both the circumstances of the crime and of the criminal before it recommends a sentence.").

George cites an ongoing study, the Capital Jury Project, to argue that, over time, and despite attempts to comply with *Gregg*, jurors' decision-making in capital sentencing has proven arbitrary and confused.[8] He also cites to several cases from outside the Fifth Circuit that supposedly demonstrate that the FDPA operates in an arbitrary and capricious manner.[9] However, the Fifth Circuit has upheld both the constitutionality of the death penalty, generally, and the constitutionality of the FDPA. *See Jones*, 132 F.3d at 252–53 (5th Cir. 1998); *United States v. Robinson*, 367 F.3d 278, 291 (5th Cir. 2004); *see also Davis*, 2003 WL 1837701, at *12 (finding "that the studies cited by defendant are not sufficient to call into question the constitutionality of the FDPA's sentencing scheme" and "that a jury can be instructed so that it will understand and appropriately apply the FDPA's provisions").[10] Further,

---

[8] R. Doc. No. 181-1, at 2 (citing William J. Bowers, *The Capital Jury Project: Rationale, Design, and Preview of Early Findings*, 70 IND. L.J. 1043 (1995)).
[9] *Id.* at 3.
[10] Other district courts have rejected the Capital Jury Project as grounds for declaring the FDPA unconstitutional. *See, e.g.*, *United States v. Duncan*, No. 07-23, 2008 WL 544847, at *1 (D. Idaho Feb. 26, 2008); *United States v. Green*, No. 06-19, 2008 WL 4000901, at *1–2 (W.D. Ky. Aug. 28, 2008) (holding that "the findings of the [Capital Jury Project] provide no basis for undermining the constitutionality of the FDPA, a statute that has withstood innumerable attacks since its passage in 1994"); *United States v. Sablan*, No. 00-531, 2006 WL 1028780, at *7–8 (D. Colo. Apr. 18, 2006); *United States v. Mikos*, No. 02-137, 2003 WL 22110948, at *17–18 & n.6 (N.D. Ill.

5

as recently as 2015 the Supreme Court explained that "it is settled that capital punishment is constitutional." *Glossip v. Gross*, 135 S. Ct. 2726, 2732 (2015); *see also United States v. Quinones*, 313 F.3d 49, 52 (2d Cir. 2002) ("[T]o the extent the defendants' arguments rely upon the Eighth Amendment, their argument is foreclosed by the Supreme Court's decision in *Gregg v. Georgia* . . . ."). [11]

---

Sept. 11, 2003) ("While these studies are likely to invoke debate, they concentrate on state penalty schemes, rather than the FDPA or instructions given in federal capital trials and are therefore unconvincing."); *United States v. Llera Plaza*, 179 F. Supp. 2d 444, 450 n.5 (E.D. Pa. 2001) ("[T]he studies do not establish that the concepts of aggravating and mitigating factors as used in the FDPA bear such a degree of intrinsic 'incomprehensibility' as to render them incapable of clarification through adequate jury instructions . . . .").

[11] Indeed, in the one federal case George cites to support his argument, the court explained that "[i]nstitutional authority" to change the death penalty-related "body of law is reserved to the Supreme Court." *United States v. Fell*, 224 F. Supp. 3d 327, 359 (D. Vt. 2016).

George does not provide any explanation or evidence to support his argument that the FDPA violates his due process rights. The Fifth Circuit has stated:

> Robinson . . . argues, citing *United States v. Quinones*, 205 F. Supp. 2d 256 (S.D.N.Y.), *reversed*, 313 F.3d 49 (2d Cir. 2002), *cert. denied*, 540 U.S. 1051 . . . (2003), that the FDPA violates the . . . Due Process Clause. The substantive due process claim is premised on the idea that all capital defendants share a liberty interest in not being executed for crimes they did not commit.
>
> . . .
>
> This argument has no merit. Whatever the risk that another person will be wrongfully convicted, Robinson has . . . presented no evidence to suggest that the FDPA is unconstitutional as applied to his case. So, he cannot invalidate the statute on the ground that it might conceivably be applied to reach an unconstitutional result in some other defendant's case.
>
> . . .

6

In a related argument, George argues that the facts of this case illustrate that the discretion of jurors to impose the death penalty is insufficiently limited.[12] He notes that, although he is alleged to have participated in a robbery that resulted in the death of Hector Trochez, he is not charged with actually killing Hector Trochez and that, consequently, he falls outside the category of defendants for whom a death sentence is warranted.[13] Specifically, George argues that "the two factors of [(1) his] alleged role in an armored car robbery and [(2)] his alleged motivation of pecuniary gain, if proven by the government, would place him outside of the kind of criminal conduct which the Supreme Court considers to be proportionately punished by the death penalty."[14]

However, the FDPA sufficiently safeguards against the imposition of the death penalty absent the requisite culpability. As discussed herein, the sentencing jury

---

> Robinson does not elaborate on the specific manner in which he believes the FDPA deprives him of procedural due process. We presume, however, from his frequent citations to the district court opinion in *Quinones*, that he agrees with that . . . court that the problem is that execution "arbitrarily eliminate[s] any possibility of exoneration after a certain point in time." *Quinones*, 205 F.Supp.2d at 265.
>
> On that theory, all executions would violate the Due Process Clause, because they render the defendant unable further to challenge his conviction. That argument is belied by the plain text of the Fifth Amendment . . . .

*Robinson*, 367 F.3d at 290, at 290–91. "[T]hree separate provisions in the Fifth Amendment—including the Due Process Clause itself—expressly contemplate the existence of capital punishment." *Quinones*, 313 F.3d at 61.

[12] R. Doc. No. 181-1, at 9.
[13] *Id.* at 10.
[14] *Id.* at 10–11.

7

cannot consider recommending the death penalty unless it first finds beyond a reasonable doubt the existence of one of four statutory intents. *See* 18 U.S.C. § 3591(a)(2); *Webster*, 162 F.3d at 322 ("The FDPA . . . limit[s] even the possibility of a death sentence to those defendants with sufficient culpability."). According to the notice of intent, with respect to George, the government intends to prove two of the statutory intent factors: that George "intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person" and that George "intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person . . . such that participation in the act constituted a reckless disregard for human life."[15]

If the sentencing jury does not unanimously find beyond a reasonable doubt the existence of at least one of the requisite mental states, the jury's deliberations are complete, and the death penalty may not be imposed. The fact that the government intends to prove additional aggravating factors if the jury deems George death-eligible does not conflict with or contradict the government's allegations as to George's mental state at the time of the alleged offense. A person can rob an armored truck for money and simultaneously participate in an act either contemplating that someone would die or knowing that a grave risk of death would occur. George's argument is without merit.

---

[15] R. Doc. No. 147, at 1–2.

**B.**

George next argues that the FDPA is unevenly applied and discriminates against minorities in violation of the Eighth Amendment's prohibition against arbitrariness and the Fifth Amendment's due process protections.[16] He relies on a congressional report and a journal article, both of which suggest that over seventy percent of defendants approved for capital prosecution are minorities.[17]

The Supreme Court has rejected similar studies:

> Statistics at most may show only a likelihood that a particular factor entered into some decisions. There is, of course, some risk of racial prejudice influencing a jury's decision in a criminal case. There are similar risks that other kinds of prejudice will influence other criminal trials. . . . The question "is at what point that risk becomes constitutionally unacceptable[.]"

*McCleskey v. Kemp*, 481 U.S. 279, 308–09 (1987) (citations omitted). Ultimately, the Supreme Court in *McCleskey* declined to accept the results of the proffered study as "the constitutional measure of an unacceptable risk of racial prejudice influencing capital decisions." *Id.* at 309.

> Because of the risk that the factor of race may enter the criminal justice process, we have engaged in "unceasing efforts" to eradicate racial prejudice from our criminal justice system. . . . Our efforts have been guided by our recognition that "the inestimable privilege of trial by jury . . . is a vital principle, underlying the whole administration of criminal justice[.]
>
> . . .
>
> At most, the . . . study indicates a discrepancy that appears to correlate with race. Apparent disparities in sentencing are an inevitable part of

---

[16] R. Doc. No. 181-1, at 4–5.
[17] *Id.* at 4 (citing Kevin McNally, *Race and the Federal Death Penalty: A Nonexistent Problem Gets Worse*, 53 DEPAUL L. REV. 1615 (2004)).

> our criminal justice system. . . . "[T]here can be 'no perfect procedure for deciding in which cases governmental authority should be used to impose death.'" . . . Despite these imperfections, our consistent rule has been that constitutional guarantees are met when "the mode [for determining guilt or punishment] itself has been surrounded with safeguards to make it as fair as possible." . . . Where the discretion that is fundamental to our criminal process is involved, we decline to assume that what is unexplained is invidious.

*Id.* at 312–13 (citations omitted).

The FDPA provides for juror discretion and contains significant safeguards. *See Jones*, 132 F.3d at 241 ("The FDPA provides sufficient safeguards to prevent the arbitrary imposition of the death penalty."); *Webster*, 162 F.3d at 354. The Fifth Circuit has identified numerous mechanisms limiting prosecution under the FDPA, including the law's requirement that prior notice be given to the defendant for aggravating factors, constitutional constraints on what aggravating factors are permissible, the district court's role as a gatekeeper of information during the sentencing hearing, and the law's requirement that the jury find the existence of certain threshold criteria beyond a reasonable doubt before a defendant can be death-eligible. *See Jones*, 132 F.3d at 239–40.

"In light of the safeguards designed to minimize racial bias in the process, the fundamental value of jury trial in our criminal justice system, and the benefits that discretion provides to criminal defendants," the data proffered by George "does not demonstrate a constitutionally significant risk of racial bias affecting the [FDPA's] capital sentencing process." *McCleskey*, 481 U.S. at 313; *see also United States v. Sablan*, No. 00-531, 2006 WL 1028780, at *11 (D. Colo. Apr. 18, 2006) ("[B]y requiring juries to consider the individual characteristics of the defendant and specific

10

circumstances of the crime, and thereby narrowing the class of individuals subject to the death penalty, the FDPA in effect recognizes that 'a consistency produced by ignoring individual differences is a false consistency.'") (quoting *Eddings v. Okla.*, 455 U.S. 104, 112 (1982)); *Sampson*, 486 F.3d at 27 ("*McCleskey* prohibits us from assuming that 'what is unexplained is invidious.'") (quoting *McCleskey*, 481 U.S. at 313).

Moreover, the FDPA provides that, when determining whether a death sentence is justified, the jury may not consider the race, color, or national origin of the victim. 18 U.S.C. § 3593(f). Nor may the jury recommend the death penalty unless it has concluded that it would recommend the death penalty for the instant crime regardless of the defendant's race, color, or national origin. § 3593(f); *Webster*, 162 F.3d at 356 (interpreting § 3593(f) as "prohibiting the consideration of race in sentencing"). Ultimately, the Court finds that "[t]he statistics submitted by [George] are no more probative than those rejected in *McCleskey*." *Sampson*, 486 F.3d at 26.

## C.

George also contends that the United States Department of Justice's death penalty protocol is "shrouded in secrecy" and violates his Sixth Amendment right to a public trial and his Fifth Amendment right to "a fair, orderly, and just judicial proceeding."[18] Chapter 9-10.000 of the Department of Justice's manual "sets forth the policies and procedures for all Federal cases in which a defendant is charged, or could be charged, with an offense subject to the death penalty." U.S. Dep't of Justice, Justice

---

[18] R. Doc. No. 181-1, at 5, 6.

11

Manual 9-10.010 (2014) (hereinafter "Justice Manual"). Before seeking an indictment for an offense punishable by death, a United States Attorney must consult with the Capital Case Section of the Criminal Division. *Id.* at 9-10.040. The Attorney General makes the final decision whether to seek the death penalty in any particular case, and the decision-making process is confidential. *Id.* at 9-10.050. However,

> [e]ach such decision must be based upon the facts and law applicable to the case and be set within a framework of consistent and even-handed national application of Federal capital sentencing laws. Arbitrary or impermissible factors—such as a defendant's race, ethnicity, or religion—will not inform any stage of the decision-making process. The overriding goal of the review process is to allow proper individualized consideration of the appropriate factors relevant to each case.

*Id.* at 9-10.030.

George does not explain how the Department of Justice's death penalty protocol violates his Fifth Amendment right to due process. As to his Sixth Amendment right to a public trial, he argues that the confidentiality of the process "flies in the face" of the Sixth Amendment because the protocol excludes defendants and their counsel.[19] But George mischaracterizes the process, which provides, "In any case in which the United States Attorney . . . is contemplating requesting authorization to seek the death penalty . . . , the United States Attorney . . . shall give counsel for the defendant a reasonable opportunity to present information . . . which may bear on the decision whether to seek the death penalty."[20] Justice Manual 9-

---

[19] *Id.* at 6.
[20] In fact, as the government notes, George's counsel presented his case for mitigation to the Attorney General's Review Committee on Capital Cases in Washington, D.C. in June 2018. R. Doc. No. 225, at 10.

12

10.080. The First Circuit has held that the process includes "numerous safeguards" that prevent it from being unconstitutionally arbitrary. *Sampson*, 486 F.3d at 24.

More importantly, George's argument ignores the important distinction between the government's decision to seek the death penalty and a jury's determination that the death penalty is warranted. The former is an internal government process that creates no rights for defendants. *United States v. Lee*, 274 F.3d 485, 493 (8th Cir. 2001); *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000); *Nichols v. Reno*, 124 F.3d 1376, 1377 (10th Cir. 1997); *United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir. 1994). The latter, by contrast, is subject to review and constitutional constraints: indeed, the government may *seek* the death penalty, but a death sentence may not be imposed without assistance from a federal grand jury and an ultimate recommendation from a sentencing jury. *See United States v. Bourgeois*, 423 F.3d 501, 506–07 (5th Cir. 2005) (holding that the factors that make a defendant eligible for the death penalty must be charged by indictment); *see also United States v. Reilly*, 545 F. Supp. 2d 630, 642 (E.D. Mich. 2008) ("Although the Government ultimately issues the Notice of Intent, the death penalty is not an option if the grand jury does not indict on a death-eligible offense.").

**D.**

George also argues that the FDPA's relaxed evidentiary standard violates his Fifth and Sixth Amendment rights by permitting the admission of testimonial hearsay evidence.[21] However, this argument is precluded by Fifth Circuit precedent:

---

[21] R. Doc. No. 181-1, at 6–7.

> We previously have explained that the FDPA's evidentiary standard is based on the principle that the jury must "receive sufficient information regarding the defendant and the offense in order to make an individual sentencing determination." *Jones*, 132 F.3d at 241. "Consequently, the relaxed evidentiary standard does not impair the reliability or relevance of information at capital sentencing hearings, but helps to accomplish the individualized sentencing required by the constitution." *Id.* at 242. Accordingly, this court consistently has held that the FDPA's relaxed evidentiary standard during a defendant's sentencing proceeding is not unconstitutional.

*United States v. Snarr*, 704 F.3d 368, 399 (5th Cir. 2013).[22]

### E.

Finally, George argues that the death penalty is contrary to evolving standards of decency, particularly as it "leads to the execution of innocent people."[23] George cites the Second Circuit's opinion in *United States v. Quinones*, 313 F.3d 49 (2d Cir. 2002), to support his argument that capital punishment violates the Eighth Amendment's ban on cruel and unusual punishment.[24] However, George misstates *Quinones*'s holding. The Second Circuit ultimately held that the defendant's Eighth Amendment challenge to the FDPA was foreclosed by Supreme Court precedent: "[I]f the well-settled law on this issue is to change, that is a change that only the Supreme Court or Congress is authorized to make." *Quinones*, 313 F.3d at 69–70. As this Court has reiterated, it is similarly bound by the decisions of higher courts.

The Second Circuit summarized the significance of the Supreme Court's opinion in *Gregg v. Georgia* to modern death penalty challenges:

---

[22] Nothing in this order precludes George from challenging the admissibility of specific evidence during or before the sentencing hearing.
[23] R. Doc. No. 181-1, at 8, 9.
[24] *Id.* at 9.

14

> [T]he Supreme Court expressly held in *Gregg v. Georgia* that capital punishment does not constitute a *per se* violation of the Eighth Amendment. . . . The Court reached this conclusion despite the petitioner's argument that the death penalty "entail[s] both mistake and caprice," and that "some people will be killed wrongly," Br. for Petitioner in Gregg at 10a, and despite its own acknowledgment that "[t]here is no question that death as a punishment is unique in its severity and irrevocability.". . . The *Gregg* Court was . . . keenly aware of the argument asserted here, that execution terminates any asserted right to the opportunity for exoneration during one's natural life. Despite this awareness, the Court rejected the proposition that capital punishment is unconstitutional *per se*.

*Quinones*, 313 F.3d at 67; *see also Glossip v. Gross*, 135 S. Ct. 2726, 2732 (2015) ("[I]t is settled that capital punishment is constitutional."); *Baze v. Rees*, 553 U.S. 35, 61 (2008) ("This Court has ruled that capital punishment is not prohibited under our Constitution . . . ."). Consequently, in light of *Gregg*, the Fifth Circuit has also held that the death penalty is not *per se* unconstitutional. *Jones*, 132 F.3d at 242 ("We are bound by Supreme Court precedent which forecloses any argument that the death penalty violates the Constitution under all circumstance.").

> [The defendant] asks us to invalidate the FDPA on the ground that the death penalty is cruel and unusual punishment, in violation of the Eighth Amendment. He recognizes that this claim is foreclosed by *Gregg v. Georgia*, . . . but he argues that societal standards of decency have evolved to the point at which imposing the death penalty against an adult murderer has become an intolerably cruel act. . . . We note, however, that it is uncertain whether this court is even empowered to recognize such an evolution in the law, or must instead reserve that question for the Supreme Court. Even assuming we had such a power, Robinson presents no evidence of an evolution in societal standards of decency, and we see no reason to believe that there has emerged a national consensus against capital punishment for defendants who commit crimes that are as depraved as [the defendant's].

*Robinson*, 367 F.3d at 291. Absent the Supreme Court announcing a change in the law, the Court cannot declare the FDPA unconstitutional based on George's broad arguments that the death penalty is contrary to changed societal standards.

### III.

Accordingly,

**IT IS ORDERED** that the motion to declare the death penalty and the Federal Death Penalty Act unconstitutional is **DENIED.**

New Orleans, Louisiana, February 11, 2019.

                              **LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**