UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA     *       CRIMINAL DOCKET

VERSUS                    *       NUMBER 17-201

LILBEAR GEORGE, ET AL.      *       SECTION "I"

**MEMORANDUM IN REPLY TO
GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
LILBEAR GEORGE'S MOTION TO SEVER**

Lilbear George respectfully submits this reply to the government's *Opposition to Lilbear George's Motion to Sever*, R. Doc. 444.

Mr. George moved under Fed. R. Cim. P. 14 to sever his trial and penalty phase from his co-defendants, R. Doc. 425, a request consistent with practice in the majority of federal capital co-defendant trials. Although there is a general legal preference for joinder, trial courts have granted defendants' severance requests in the majority (64%) of federal multi-defendant capital trials held under the modern death penalty. R. Doc. 417-2 at 2 (Declaration of Kevin McNally). Mr. George has asked this Court to exercise its broad discretion and sever his trial from his co-defendants for a number of case-specific reasons. These include that:

- Mr. George and his co-defendants will likely be forced to raise antagonistic defenses at both guilt and penalty phases of any joint trial.

- A joint trial would seriously undermine the reliability of the jury's verdict as to Mr. George's guilt or innocence, and its determination of punishment, by singling out Mr. George compared to the co-defendants.

- A joint trial would infringe Mr. George's constitutional right to an individualized sentencing determination.

1

- A joint trial would imperil several of Mr. George's specific trial and sentencing rights. Specifically, it would imperil his right to exclude prejudicial and irrelevant evidence; it could result in the introduction of otherwise inadmissible statements by Mr. George's co-defendants if any are later disclosed by the government; and it would deny Mr. George notice of penalty phase aggravators.

Mr. George now submits this brief reply in support of that original motion to sever.

## I.     Severance is the norm in multi-defendant capital cases.

District courts exercise their discretion to grant severance in the "clear majority" of multi-defendant federal capital trials. R. Doc. 417-2 at 2. Severance was granted in 64% of the cases studied by the Federal Death Penalty Resource Counsel Project, and denied in just 18% of the cases.[1] *Id*. This reflects the reality that capital trials are different in kind from even the most serious and complex non-capital trials, giving rise to an "inherent tension between joinder and each defendant's constitutional entitlement to an individualized capital sentencing decision." *United States v. Bernard*, 299 F.3d 467 475 (5th Cir. 2002). As a result, "[a] trial court must be especially sensitive to the existence of such tension in capital cases, which demand a heightened degree of reliability [under the Eighth Amendment]." *Id*.

The trend favoring capital severance tracks our system's cautious approach to procedural questions in the capital context more broadly. The Supreme Court instructs that because "[death] is a different kind of punishment . . . [i]t is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." *Beck v. Alabama*, 447 U.S. 625, 638 (1980). As a result,

---

[1] In virtually all the remaining cases, the district court never ruled on the severance issue because, e.g., defendants did not move for severance before trial or a guilty plea by one defendant mooted the issue.

procedures which "tend[] to diminish the reliability of the [guilt and] sentencing determination" are looked on with extreme skepticism. *Id.*

 The government's response to Mr. George's motion to sever attempts to side-step this reality by holding up a single Eastern District of Louisiana case—the 1996 trial of capital defendants Paul Hardy and Len Davis, and non-capital defendant Damon Causey—to show that it is possible to try capital defendants jointly. R. Doc. 444 at 2 (citing *United States v. Causey*, 185 F.3d 407 (5th Cir. 1999)). Not only does this anecdotal argument wilt in the face of the legal and statistical realities, but it also fails on its own terms. First, the Fifth Circuit's 1999 opinion upheld the denial of Paul Hardy's severance not in some grand rejection of severance in capital cases, but because the prejudicial evidence Hardy worried about was never actually introduced at trial. *Causey*, 185 F.3d at 416 ("Hardy concedes there was no specific reference to that investigation in the guilt phase of the trial").

 Second, and even more persuasively, Paul Hardy and Len Davis's cases *were* eventually severed for exactly the sort of reasons Mr. George now raises. In the same 1999 opinion cited by the government, the Fifth Circuit vacated both men's death sentences and remanded the case for a new sentencing proceeding. *Id.* at 423. In anticipation of what would be a joint resentencing before a single jury, Paul Hardy moved to have his case severed because "under the Eighth Amendment, a defendant in a capital case must be afforded 'precise and individualized sentencing.'" *United States* v. *Paul Hardy, et al.*, No. 94-cr-00381 (R. Doc. 725 at 1) (quoting *Stringer v. Black*, 503 U.S. 222, 231 (1992)). Mr. Hardy urged severance to ensure that "each defendant in a capital case [is treated] with that degree of respect due the uniqueness of the individual." *Id.* (quoting *Lockett v. Ohio*, 438 U.S. 586, 605 (1978)). Counsel outlined the dangers of shackling the two men together as they fought for their lives, explaining that joint trial would:

> inevitably lead to incompatible views of the evidence which should
> be admitted at any sentencing hearing, incompatible views of the
> evidence which should be excluded from any sentencing hearing,
> and incompatible views as to whether the defendants and their
> families should even participate in the sentencing hearing.
> Moreover, it may be that certain facts offered in mitigation by Paul
> Hardy would serve as aggravating factors for Len Davis, and vice-
> versa.

*Id*. at 2. The court agreed, granting the motion to sever, and conducting separate penalty phases

before different juries. *United States* v. *Paul Hardy, et al.*, No. 94-cr-00381 (R. Doc. 726).

This decision is consistent with the severance of the cases of John Johnson and Joseph

Smith cited in Mr. George's memorandum in support of severance—the only other multi-

defendant capital case to proceed to trial in this district in recent memory. R. Doc. 425-1 at 8. The

severance orders in in the Johnson/Smith and Hardy/Davis cases do not control the result here.

They do, however, demonstrate a local practice consistent with the national trend granting

severance in a "clear majority" of multi-defendant capital cases.

## II.   Mr. George and his co-defendants will presented markedly antagonistic defenses at both the guilt and penalty phases.

Severance of two defendants is warranted when they have antagonistic defenses as to guilt

or punishment. "[M]utually antagonistic or irreconcilable defenses may be so prejudicial in some

circumstances as to mandate severance." *United States v. Zafiro*, 506 U.S. 534, 538 (1993)

(quotation marks omitted). Antagonistic defenses exist when, to find one defendant not guilty, the

jury must necessarily conclude that the other defendant is guilty. *United States v. Daniels*, 281

F.3d 168, 177 (5th Cir. 2002).

The government's response does not refute Mr. George's argument that he will be faced

with co-defendants acting in essence as additional prosecutors against him. Indeed, a

representative sample of the briefing on severance submitted by Mr. George's co-defendants,

4

demonstrates that this is exactly what will happen. *See, e.g.,* R. Doc. 425-1 at 7 (Johnson memo in support of severance) ("An effective defense for Johnson may require Johnson to act as a "second prosecutor" himself. George has allegedly committed another bank robbery that is strikingly similar to the offense . . . . Johnson has an interest in presenting this evidence to the jury because it suggests that George and Ofomata, rather than Johnson, robbed the Loomis truck and killed Hector Trochez, because George and Ofomata have robbed banks and murdered before."); R. Doc. 406-1 at 9 (Ofomata memo in support of severance) (noting the lack of evidence against Ofomata before asserting that "[t]he same is not true of other codefendants."); R. Doc. 443-1 at 11 (Brumfield memo in support of severance) ("Brumfield did not participate in the robbery or the murder. In fact, the government's cooperating informants will allegedly testify to having heard statements from George and Brumfield that suggest only (a) that Brumfield may have helped plan the robbery and (b) that although his participation in the actual crime may have been considered, it was ultimately rejected, and he affirmatively did not participate.").

Similarly, it is now clear that, faced with alleged statements from Mr. George implicating his co-defendants, those co-defendants may employ a trial strategy attacking Mr. George's credibility and/or arguing that Mr. George "framed" some or all of the other defendants. *See, e.g.,* R. Doc. 443-1 at 21 (Brumfield memo in support of severance) ("There are any number of reasons why a witness—George in this case—might lie to the informant, even knowing the informant was repeating the conversation to the FBI: to gain street credibility, to protect others he feared who were involved in the robbery/murder, to gain the informant's favor for some other purpose, to retaliate against those he named as participants for unknown reasons."); *see also* R. Doc. 406-1 at 15 (Ofomata memo in support of severance) (same). These approaches indicate that Mr. George cannot receive a fair trial if tried jointly with these co-defendants.

### III.   A joint trial could result in the introduction of otherwise inadmissible statements by Mr. George's co-defendants.

Mr. George raised the possibility of inadmissible statements by other defendants in his severance motion, while noting that "we do not know whether the government plans on using any such statements." R. Doc. 425-1 at 19. In its response the government makes clear that is, in fact, likely to introduce such statements. R. Doc. 424 at 3 ("the United States will offer certain admissions made to acquaintances by Lilbear George *(and other co-defendants)*, which described the robbery and murder of Hector Trochez and implicated co-defendants.") (emphasis added).

One such statement, alluded to the discovery (but not yet produced), may come from Mr. George's co-defendant Esteves. An FBI agent has asserted that a CI has claimed that Mr. Esteves allegedly told CI that he was involved in the robbery, allegedly told CI that he planned the robbery for several months, allegedly told CI that he drove the car during the robbery, allegedly showed CI a shoebox of money, estimated by CI to be $80,000-$100,000, allegedly told CI that the money came from the robbery, and that CI has claimed to have observed the money had holes in it. Esteves allegedly told CI this information in June 2014, after CI had spoken with the FBI and relayed information to them on at least two occasions. BS 31,507. This statement (and any others like it) would be inadmissible at a trial of Mr. George alone.

As has been discussed at length in Mr. George's co-defendants' motions to sever, the government is also likely to introduce statements allegedly made by Mr. George inculpating himself and his co-defendants. A likely defense strategy at trial would be for Mr. George to attack the credibility and reliability of these statements. In this scenario, the introduction of otherwise-inadmissible statement(s) from Esteves (or others) corroborating the alleged statements from Mr. George would be highly prejudicial, and indeed, unconstitutional.

6

As Mr. George argued in his initial motion to sever, "[a]n accused is deprived of his rights under the Confrontation Clause when the confession of a non-testifying codefendant that implicates the accused is introduced into evidence at their joint trial." *United States v. Cope*, 312 F.3d 757, 780 (6th Cir. 2002) (citing *Bruton v. United States*, 391 U.S. 123, 137 (1968)). The introduction of co-defendant's statement that "powerfully incriminat[es]" the defendant, with an instruction that the jury disregard it in determining innocence or guilt, violates due process. What is more, "'[t]he naive assumption that prejudicial effects can be overcome by instructions to the jury...all practicing attorneys know to be unmitigated fiction . . . .'" *Bruton v. United States*, 391 U.S. 123, 129 (1968) (quoting *Krulewitch v. United States*, 336 U.S. 440, 453 (1949)). Such a scenario would be presented here should the defendants be tried jointly.

Finally, Mr. George joins his co-defendant Ofomata in requesting that this Court hold an evidentiary hearing or, at a minimum, an in camera review of the statements and circumstances of the confidential source (CS)'s cooperation with the government. *See* R. Doc. 489 at 3-4. The federal rules provide that before ruling on a severance motion, "the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence." Fed. R. Crim. P. 14(b).

At a recent in-chambers conference, *see* R. Doc. 463, this Court inquired of the government whether the CS's who claim George made incriminating statements would testify at trial, and the government responded in the affirmative. The Court also asked whether any of the CS's had an ongoing relationship with the government. The government said they did not. This conference reveals the need for a full hearing on the issue, and demonstrates that the information obtained, and other information relevant to the pending severance motions, could be more fully and properly

explored in an evidentiary hearing or in camera review. Mr. George respectfully requests that such proceedings be undertaken.

**WHEREFORE**, for the foregoing reasons, and those identified in Mr. George's original motion, this Court should grant Mr. George's *Motion to Sever*, and try him individually.

Respectfully submitted,

/s/ Bruce G. Whitaker
Bruce G. Whittaker, No. 08339
1215 Prytania Street, Suite 332
New Orleans, LA 70130
(504) 554-8674
bruce@whittakerlaw.com

/s/ Jerrod E. Thompson-Hicks
Jerrod E. Thompson-Hicks, No. 32729
Assistant Federal Public Defender

/s/ Ada A. Phleger
Ada A. Phleger, No. 32922
Research & Writing Specialist
500 Poydras Street, Suite 318
New Orleans, LA 70130
(504) 589-7931
jerrod_thompson-hicks@fd.org
ada_phleger@fd.org

*Counsel for Lilbear George*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Ada A. Phleger
ADA A. PHLEGER
Research and Writing Specialist