# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 17-201 |
| LILBEAR GEORGE, ET AL. | SECTION I |

## ORDER & REASONS

Before the Court are motions to sever filed by defendants Chukwudi Ofomata[1] ("Ofomata"), Curtis Johnson, Jr.[2] ("Johnson"), and Lilbear George[3] ("George") (together, the "capital defendants"), and by defendant Jeremy Esteves[4] ("Esteves"). Ofomata, Johnson, and George face the death penalty and move to sever both the guilt phase and penalty phase of their trials from those of their codefendants; each capital defendant seeks an individual trial for both phases. Esteves and defendant Robert Brumfield, III ("Brumfield"),[5] who are charged in the same counts as the capital defendants in the second superseding indictment[6] and do not face the death penalty, request severance from the capital defendants.[7]

---

[1] R. Doc. No. 406.

[2] R. Doc. No. 417.

[3] R. Doc. No. 425.

[4] R. Doc. No. 476.

[5] The sixth defendant in this case, Jasmine Theophile ("Theophile"), is charged with George in count four of the second superseding indictment. Theophile, who does not face the death penalty, has neither moved for nor objected to a severance. The Court will refer to Esteves, Brumfield, and Theophile collectively as the "non-capital defendants."

[6] *See* R. Doc. No. 237.

[7] Brumfield filed a motion to sever his trial from the trials of his five codefendants. *See* R. Doc. No. 443. On August 13, 2019, the Court held an in-chambers conference with the parties to discuss, *inter alia*, the defendants' severance motions; the motions

Ofomata, Johnson, George, and Esteves argue that they will suffer prejudice if the Court does not grant a severance. The capital defendants also contend that joint guilt phase and penalty phase hearings will compromise their right to an individualized determination of their guilt or innocence and the sentence they should receive. Because the capital defendants have moved to continue trial, Esteves asserts that a joint trial with the capital defendants will violate his constitutional and statutory rights to a speedy trial.[8] The government has filed opposition memoranda[9] to the defendants' severance motions, and the defendants have submitted replies.[10]

On August 13, 2019, the Court held an in-chambers conference with counsel for all parties to discuss the pending motions.[11]

---

filed by George, Johnson, and Ofomata to continue trial, which Brumfield did not oppose; and Esteves's speedy trial claims, which Esteves raised in his severance motion. *See* R. Doc. No. 513. On August 21, 2019, Brumfield's counsel informed the Court that Brumfield requested, with the Court's consent, to be severed from the capital defendants and to proceed to trial with Esteves on November 4, 2019. *See* R. Doc. No. 518. The Court notes that Brumfield has not raised any objections to being tried with Theophile. Thereafter, with Brumfield's consent, the Court dismissed Brumfield's motion to sever as moot without opposition. *See* R. Doc. No. 532.

[8] At the time the severance motions were filed, the joint trial of the capital and non-capital defendants was scheduled to start on November 4, 2019. On July 31, 2019, Ofomata, Johnson, and George filed motions to continue trial until November 2020. R. Doc Nos. 467, 468 & 469. Esteves was the only defendant who opposed a continuance. *See* R. Doc. No. 476-1, at 5. The government did not initially oppose a continuance of the joint trial of all defendants, but subsequently indicated that it opposed a one-year continuance. *See* R. Doc. No. 506. On August 19, 2019, pursuant to the Court's order, the government notified the Court that the capital defendants had proposed a new trial date of September 14, 2020. The government objected, for record purposes, to this date for the capital defendants' trial, but informed the Court that it would be prepared to try the capital defendants on the new date. As discussed herein, the trial of the capital defendants shall be continued to September 14, 2020.

[9] R. Doc. Nos. 424, 444 & 507.

[10] R. Doc. Nos. 489, 501 & 503.

[11] *See* R. Doc. No. 513.

For the following reasons, the capital defendants' motions for individual trials at the guilt phase and penalty phase of the proceedings are denied at this time, preserving their right to re-urge their motions at trial; Esteves's motion and Brumfield's request for severance from the capital defendants are granted.

## I.     FACTUAL BACKGROUND

The defendants in this case have been charged in a four-count second superseding indictment[12] arising from an armored truck robbery and the murder of Hector Trochez ("Trochez") that occurred on December 18, 2013. Three counts of the indictment charge Ofomata, Johnson, George, Brumfield, and Esteves with conspiring to obstruct, delay, and affect commerce by robbery (otherwise known as a Hobbs Act robbery); aiding and abetting one another to commit a Hobbs Act robbery; and aiding and abetting one another to knowingly use, carry, brandish, and discharge firearms during and in relation to crimes of violence and, in the course thereof, causing the death of Trochez through the use of firearms.[13] The fourth count charges George and Theophile with aiding and abetting each other to alter, destroy, mutilate, and conceal a cellular telephone with the intent to impair its integrity or availability for use in an official proceeding.[14]

On August 31, 2018, the government filed notices of intent to seek the death penalty against George, Ofomata, and Johnson.[15]

---

[12] R. Doc. No. 237.

[13] *See id*. at 1–3.

[14] *Id*. at 4.

[15] R. Doc. Nos. 147, 148, & 149. The government filed a second amended notice of intent as to George on July 1, 2019. *See* R. Doc. No. 409.

## II.    LAW AND ANALYSIS

The federal judicial system manifests a preference for joint trials, as they "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 538 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)). Accordingly, "[i]t is the rule, not the exception, 'that persons indicted together should be tried together, especially in conspiracy cases.'" *United States v. Thomas*, 627 F.3d 146, 156 (5th Cir. 2010) (quoting *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993)). Because joint trials enable the jury to "obtain[] a more complete view of all the acts underlying the charges," the jury may "arrive more reliably at its conclusions regarding the guilt or innocence of a particular defendant" and "assign fairly the respective responsibilities of each defendant in the sentencing." *Buchanan v. Kentucky*, 483 U.S. 402, 418 (1987).

However, when a joint trial would prejudice defendants properly joined under Rule 8(b) of the Federal Rules of Criminal Procedure, a district court may sever the defendants' trials pursuant to Federal Rule of Criminal Procedure 14(a).[16] "Generic

---

[16] Under Rule 8(b):

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Rule 14(a) provides for severance of defendants:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the

allegations of prejudice will not suffice" as grounds for severance. *United States v. Ledezma-Cepeda*, 894 F.3d 686, 690 (5th Cir. 2018). Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable determination about guilt or innocence." *Zafiro*, 506 U.S. at 539.

 "[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id.* at 538. Instead, a defendant moving for severance bears the burden of showing that "specific and compelling prejudice," of a type against which the trial court cannot protect, would arise if the defendants are tried jointly. *Thomas*, 627 F.3d at 157 (quoting *United States v. Lewis*, 476 F.3d 369, 384 (5th Cir. 2007)). Separate trials may be necessary when the risk of prejudice is high, but "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* (citing *Richardson*, 481 U.S. at 211). Defendants moving for severance "must identify specific instances of prejudice unremedied by limiting instructions." *Ledezma-Cepeda*, 894 F.3d at 690. In conspiracy cases, the Fifth Circuit "generally favor[s] specific instructions over severance." *Id.*

Ofomata, Johnson, George, and Esteves object to a joint trial on multiple grounds. In their motions to sever, the capital defendants have identified three forms of potential prejudice that would arise in joint guilt phase and penalty phase hearings: (1) problematic *Bruton* issues that would violate their rights under the

---

government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Confrontation Clause of the Sixth Amendment; (2) antagonistic defenses among the defendants; and (3) prejudicial spillover effects from evidence introduced against their codefendants. Esteves, who opposes the capital defendants' motions to continue trial, asserts that a joint trial with the capital defendants will violate his right to a speedy trial and his rights under the Confrontation Clause, as well as compromise his right to an individualized determination of his guilt or innocence.[17] The Court will address each of these challenges in turn.

## A. *Bruton* Violations and the Confrontation Clause

### i.

The government has indicated that it intends to introduce statements allegedly made by some of the defendants that are self-incriminatory and, in some instances, also incriminate codefendants in the robbery and death of Trochez. Ofomata, Johnson, George, and Esteves argue that at a joint trial, the introduction of these statements would violate their rights under the Confrontation Clause, pursuant to *Bruton v. United States*, 391 U.S. 123 (1968). Specifically, these defendants object to

---

[17] Esteves previously moved to sever on October 19, 2018, or, in the alternative, to empanel a death-qualified jury for the capital defendants and a separate jury for the non-capital defendants. *See* R. Doc. No. 168-1. Eight days before he filed his first severance motion, Esteves's codefendants had moved to continue the trial—which, at that time, was scheduled to start on January 28, 2019—for two years, to October 2020. *See* R. Doc. No. 158. Consequently, Esteves also argued in his first severance motion that a joint trial of all defendants, capital and non-capital, would violate his right to a speedy trial should the Court grant the then-pending motion to continue trial. *See* R. Doc. No. 168-1, at 5. The Court denied Esteves's first severance motion, finding that Esteves had not demonstrated, at that time, that he would be prejudiced by a joint trial or a continuance. *See* R. Doc. Nos. 209 & 210. Esteves now argues that a joint trial of only the non-capital defendants would promote judicial economy. *See* R. Doc. No. 476-1, at 10.

statements that George allegedly made to confidential informants ("CIs") after the offense occurred describing George's involvement and the involvement of his codefendants in the robbery and murder.[18] George has raised concerns regarding the introduction of statements allegedly made by his codefendants that incriminate him, although he acknowledges that none has been produced to date.[19]

For the following reasons, based on the record as currently presented, it appears that George's alleged statements to the CIs will not implicate *Bruton* concerns at a joint trial. Therefore, the Court does not find, at this stage, that the defendants' *Bruton* concerns warrant a severance. However, the defendants may re-urge their *Bruton* arguments, if appropriate, at trial.

The Confrontation Clause of the Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to be confronted with the witnesses against him. U.S. Const. amend. VI. This right includes the opportunity to cross-examine the witness. *Richardson*, 481 U.S. at 206. In *Bruton v. United States*, the United States Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause when the statements of a non-testifying codefendant naming the defendant as a participant in the crime are introduced at their joint trial. 391 U.S. at 125–26. These statements are inadmissible even if the jury is instructed to consider them only against the codefendant who made the statements. *Id.* at 137.

---

[18] *See* R. Doc. No. 406-1, at 10–18; R. Doc. No. 417-1, at 9–10; R. Doc. No. 443-1, at 8–10; R. Doc. No. 476-1, at 6–8.
[19] *See* R. Doc. No. 425-1, at 19. Because George has not identified specific statements by his codefendants that would run afoul of *Bruton*, the Court does not find that his claim raises a *Bruton* challenge at this time.

The *Bruton* doctrine is limited to statements that expressly implicate the defendant through direct reference. *United States v. Nanda*, 867 F.3d 522, 527 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1578 (2018) (citing *Richardson*, 481 U.S. at 208). Under a "narrow exception" to *Bruton*, an inculpatory confession by a codefendant may be admissible at trial if it: (1) has been redacted to remove the defendant's name; (2) is not "incriminating on its face"; and (3) becomes incriminating "only when linked with evidence introduced later at trial." *United States v. Gibson*, 875 F.3d 179, 194 (5th Cir. 2017) (citing *Richardson*, 481 U.S. at 207–08); *see Gray v. Maryland*, 523 U.S. 185, 195 (1998) ("*Richardson* placed outside the scope of *Bruton's* rule those statements that incriminate inferentially."). However, merely substituting blank spaces or other deletions for references to the defendant is insufficient. The Supreme Court explained in *Gray v. Maryland* that redacted confessions are "facially incriminat[ing]" and violate *Bruton* if they include "statements that, despite redaction, obviously refer directly to someone, often obviously to [the defendant], and involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." 523 U.S. at 196.

Interpreting *Richardson* in the context of *Bruton*, the Fifth Circuit has explained that "[a]dmitting into evidence admissions of a non-testifying co-defendant that only implicate the defendant when added to other trial evidence is not a *Bruton* violation." *United States v. Dickerson*, 909 F.3d 118, 126 (5th Cir. 2018). To guard against potential prejudice from the confession, the court should instruct the jury to

consider the statement only against the declarant-codefendant. *Richardson*, 481 U.S. at 206.

Significantly, *Bruton's* protective scope is limited to statements that are "testimonial" in nature. In *Crawford v. Washington*, the Supreme Court concluded that the Confrontation Clause only applies to "testimonial" statements; it does not bar the admission of out-of-court statements that are nontestimonial. 541 U.S. 36, 59 (2004); *see Whorton v. Bockting*, 549 U.S. 406, 412 (2007) (affirming that the Confrontation Clause does not apply to nontestimonial out-of-court statements); *United States v. Delgado*, 401 F.3d 290, 299 (5th Cir. 2005) (holding that *Crawford* is not applicable to nontestimonial hearsay statements). Testimonial statements are inadmissible when the declarant is unavailable to testify and the defendant has not had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 53–54. Accordingly, every circuit court of appeals that has considered the issue has concluded that the *Bruton* doctrine is limited to testimonial statements. *Lucero v. Holland*, 902 F.3d 979, 989 (9th Cir. 2018) (collecting cases); *see United States v. Vasquez*, 766 F.3d 373, 378–79 (5th Cir. 2014).

While the Supreme Court left open the precise definition of a "testimonial" statement, the Court delineated that it includes, at a minimum, police interrogations and prior testimony at a preliminary hearing, grand jury, or trial. *Crawford*, 541 U.S. at 68 n.10.[20] Statements made to individuals who are not "principally charged with

---

[20] The Supreme Court in *Crawford* explained:

uncovering and prosecuting criminal behavior" are not "categorically outside the Sixth Amendment," but they are "significantly less likely to be testimonial than statements given to law enforcement officers." *Ohio v. Clark*, 135 S. Ct. 2173, 2182 (2015). In all cases, "standard rules of hearsay, designed to identify some statements as reliable, will be relevant" to the testimonial inquiry. *Michigan v. Bryant*, 562 U.S. 344, 359 (2011).

Statements are testimonial and, therefore, barred by the Confrontation Clause when their "primary purpose" is to "establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). The "primary purpose" determination requires courts to "objectively evaluate the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs." *Bryant*, 562 U.S. at 370. If the purpose of an encounter was to "create a record for trial" or an "out-of-court substitute for trial testimony," the statements made in the context of the encounter are testimonial and thereby inadmissible pursuant to the Confrontation Clause. *United*

---

Various formulations of this core class of "testimonial" statements exist: "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," . . . "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," . . . "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Crawford*, 541 U.S. at 51–52 (citations omitted).

*States v. Polidore*, 690 F.3d 705, 711 (5th Cir. 2012) (citing *Bryant*, 562 U.S. at 358–59). "Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Bryant*, 562 U.S. at 359.

## ii.

The primary statements at issue are inculpatory statements allegedly made by George to CIs describing his role and the involvement of codefendants in the robbery and murder of Trochez.[21] According to the government, these statements were later relayed to FBI agents. The government has advised the Court that it intends to "offer certain admissions made to acquaintances by Lilbear George (and other co-defendants), which described the robbery and murder of Hector Trochez and implicated co-defendants."[22] The defendants describe these statements as assertions by George that George committed the robbery, that "Pipe" (Esteves) was the driver of the vehicle that transported some of the defendants to and from the bank,[23] that

---

[21] The defendants also raise concerns regarding statements that Esteves allegedly made to CIs describing Esteves's involvement in the robbery and murder. *See* R. Doc. Nos. 443-1, at 9; 501, at 6. However, these statements appear to implicate Esteves alone and may therefore be admissible under Federal Rule of Evidence 801(d)(2)(a) as a statement by an opposing party. Esteves's alleged statements, based on the record before the Court, do not raise *Bruton* issues.

[22] R. Doc. No. 424, at 3. The Court notes that the government has not specified which defendants other than George made statements implicating codefendants that the government intends to introduce at trial.

[23] The New Orleans Police Department determined that the individuals involved in the robbery and shooting of Trochez arrived at the bank in a Chevrolet Tahoe and left in the same vehicle.

"Chuck" (Ofomata) and "Blow" (Johnson) were involved in the robbery, and that Brumfield was "supposed to participate in the robbery but did not."[24]

According to the government, these statements were neither made directly to any law enforcement official nor the product of any interrogation or formal proceeding.[25] Instead, the government contends, they were "snippets of conversations between George and persons he knew."[26] The government further asserts that it did not pre-arrange for the CIs to have these conversations with George and that FBI agents obtained the statements after George had spoken with the CIs. At an in-chambers conference, the government advised the Court that the CIs were not acting in coordination with the government when they spoke with George.[27] However, several defendants have raised concerns that the FBI had pre-existing relationships with the CIs before the CIs spoke with George.[28]

Based on the record presented, it appears that the statements between George and the CIs are nontestimonial and, therefore, fall outside of the *Bruton* rule and the limiting bar of the Confrontation Clause as enunciated in *Crawford*. As the parties have represented to the Court, George made these statements to his acquaintances in an informal setting.[29] They do not appear to have been created for the purpose of

---

[24] *See* R. Doc. Nos. 406-1, at 6–7; 417-1, at 3–4; 443-1, at 8–10.

[25] *See* R. Doc. No. 424, at 3.

[26] *Id.*

[27] *See* R. Doc. No. 463.

[28] *See* R. Doc. Nos. 443-1, at 19–20 & 489, at 2–4; *see also* R. Doc. No. 501, at 7–8.

[29] Ofomata has suggested that George could have made these statements to the CIs for several reasons, none of which suggests a testimonial purpose: "to gain street credibility, to gain the informant's favor for some other purpose, to retaliate against those he named as participants for unknown reasons." R. Doc. No. 406-1, at 15. As

"creat[ing] a record for trial" or serving as a substitute for in-court testimony. *See*

*Polidore*, 690 F.3d at 711; *Bryant*, 562 U.S. at 358–59. The contention that the CIs

later relayed George's confessions to law enforcement officers does not render them

testimonial, as the original statements do not appear to have been made in the

context or for the primary purpose of creating a record for use at trial. *See Bryant*,

562 U.S. at 370.[30] Accordingly, George's statements do not appear to run afoul of

*Bruton* because they are not testimonial statements that would violate the

defendants' rights under the Confrontation Clause.[31] *See United States v. Dargan*,

---

the Supreme Court has explained, "[A]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford*, 541 U.S. at 51. Based on the record currently presented, George's alleged statements are more analogous to the latter category of informal remarks.

[30] The Supreme Court and other circuit courts of appeals have reached the same conclusion in cases with similar circumstances. *See United States v. Bourjaily*, 483 U.S. 171, 181–84 (1987) (concluding that admissibility of statements that codefendant made unwittingly to an FBI informant was not barred by the Confrontation Clause); *United States v. Dale*, 614 F.3d 942 (8th Cir. 2010) (holding that defendant's incriminating statements made to a prisoner and recorded on a wire were nontestimonial because the defendant could not "reasonably expect [the statements] to be used prosecutorially") (quoting *Crawford*, 541 U.S. at 51)); *United States v. Saget*, 377 F.3d 223, 229 (2d Cir. 2004) (holding that "a declarant's statements to a confidential informant, whose true status is unknown to the declarant, do not constitute testimony within the meaning of *Crawford*").

[31] The Tenth Circuit explained in *United States v. Dale*:

> Thus, the critical distinction between *Bruton* and this case is the circumstances under which the out-of-court statement was made. Whereas in *Bruton* the incriminating statement was the product of a formal interrogation and therefore testimonial, the incriminating statements made by Dale here were made unwittingly, and not in anticipation by Dale of future use of the statements at trial. Under our present understanding of the confrontation right, governed by *Crawford,* the introduction of Dale's out of court statements did not violate Johnson's confrontation right.

13

738 F.3d 643 (4th Cir. 2013) ("Our conclusion that [the codefendant's] statements were nontestimonial therefore suffices to dispatch [the defendant's] *Bruton* argument as well.").

The *Bruton* analysis, however, does not end the inquiry as to the admissibility of George's statements to the CIs. As previously stated, when the primary purpose of an out-of-court statement is nontestimonial, "the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Clark*, 135 S. Ct. at 2180 (quoting *Bryant*, 562 U.S. at 359).

The government must establish a proper evidentiary foundation to support the admission of any such statements at trial. However, because it appears, based on the present record, that the alleged statements are nontestimonial and may, therefore, be admissible notwithstanding the Confrontation Clause, the introduction of these statements does not warrant a severance based on *Bruton* concerns at this time.[32]

### B. Antagonistic Defenses

### i.

As an additional basis for severance, the capital defendants claim that their codefendants will present antagonistic defenses that will prejudice them at a joint

---

614 F.3d at 956.

[32] The Court emphasizes that the Court, as well as the defendants, have not yet had the benefit of reviewing any statements made by a defendant implicating a codefendant that the government intends to introduce at trial. For this reason, any defendant implicated by the statements of a codefendant may re-urge the *Bruton* issue, if it is an issue, at trial.

trial and turn each codefendant into a "second prosecutor" of the others.[33] The Court is not yet convinced.

For example, Johnson has indicated that he intends to present an alibi defense that may be undercut by George's statements to the CIs, if they are admitted, alleging Johnson's presence at the robbery.[34] Ofomata has claimed that George's statements implicating him in the offense would be "powerfully incriminating," particularly given the alleged absence of physical evidence linking Ofomata to the crime.[35] And George has raised concerns that his attempt to show that a codefendant, rather than George, shot and killed Trochez, will force the jury to "reject the defense of one or more co-defendants."[36] Although the Court has not yet determined the admissibility of George's statements to the CIs, the Court finds that even if the statements are admitted, the alleged disparities between the anticipated defenses do not warrant severance.

The Supreme Court has held that "[m]utually antagonistic defenses are not prejudicial *per se*," and it has refused to adopt a bright-line rule mandating severance when codefendants present defenses that conflict. *Zafiro*, 506 U.S. at 534, 538. To serve as a basis to compel severance, the joint defendants must demonstrate that the defenses are "so diametrically opposed that 'the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the

---

[33] *See* R. Doc. Nos. 406-1, at 28; 417-1, at 16; 425-1, at 6.
[34] *See* R. Doc. No. 417-1, at 16–17.
[35] R. Doc. No. 406-1, at 18.
[36] R. Doc. No. 425-1, at 7.

testimony offered on behalf of his co-defendant.'" *United States v. Daniels*, 281 F.3d 168, 177 (5th Cir. 2002) (quoting *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir. Unit B 1981)). Under this "stringent standard," the conflict must concern the "core or essence of a defense, not merely 'minor or peripheral matters.'" *Id.*

Even if such a conflict between defenses is present, the "public interest in judicial economy and the administration of justice" may outweigh the need for severance when the court gives limiting instructions to the jury to cure any risk of prejudice. *Id.* (citing *Zafiro*, 506 U.S. at 539). The court may remedy potential prejudice from codefendants' accusations against each other by instructing the jury that it must consider the evidence as to each defendant separately and individually and that each defendant is entitled to have his case determined by his own conduct and the evidence applicable to him. *See Zafiro*, 506 U.S. at 938; *United States v. Warren*, 728 F. App'x 249, 256 (5th Cir. 2018), *cert. denied sub nom. Thi Huong Le v. United States*, 139 S. Ct. 158 (2018).

### ii.

Based on the present record, the Court finds that the capital defendants' claims of mutually antagonistic defenses do not rise to the level of an irreconcilable conflict that would compel severance. While the capital defendants may present conflicting accounts of their involvement (or lack thereof) in the offense, the jury may believe some, all, or none of them. Although Ofomata contends that the government will portray him as the shooter who killed Trochez,[37] the government has indicated that

---

[37] R. Doc. No. 406-1, at 20.

it intends to prove that all three capital defendants fired their weapons at Trochez and are equally culpable.[38]

Unlike other cases in which a court granted a severance based on irreconcilable defenses, each capital defendant here may claim his innocence without mandating the conviction of a codefendant. The capital defendants cite *United States v. Green* to support their antagonistic defense argument, but the circumstances of that case are distinguishable. 324 F. Supp. 2d 311 (D. Mass. 2004).

In *Green*, the district court severed the trials of two capital codefendants because ballistics evidence suggested that there was only *one* shooter who committed a murder in aid of racketeering, creating a "zero sum game" among the codefendants' mutually exclusive defenses that the other man committed the crime. *Id*. at 324. By contrast, here, the government alleges that *all three* capital defendants shot at Trochez and have equal degrees of culpability.[39] Based on these circumstances, the jury in this case need not disbelieve the core of one defendant's defense in order to believe the core of a codefendant's defense.[40]

---

[38] R. Doc. No. 444, at 2.

[39] *Id.*

[40] For example, the jury could believe that Johnson was not present at the robbery based on his alibi without necessarily convicting his codefendants. Similarly, the jury could find that a lack of physical evidence linking Ofomata to the crime supports his defense that he was not involved, which does not require a parallel finding that the codefendants are guilty.

As the court explained in *United States v. Aquart*, severance is warranted when "the defenses mounted require[] the conviction of at least one defendant," but not when "the jury could . . . acquit[] any number of defendants despite their contradictory defenses." No. 3:06CR160, 2010 WL 3211074, at *6 (D. Conn. Aug. 13, 2010). Other courts have also found that general allegations by a defendant to pin the crime on a

The capital defendants in this case have also failed to specifically identify the irreconcilable and mutually exclusive nature of their anticipated defenses. "[V]ague and conclusory allegations" of conflicting defense theories are insufficient to support a motion to sever. *Daniels*, 281 F.3d at 178. For example, courts have found that an alibi defense, even if it may be antagonistic to some degree, does not warrant a severance when it is not irreconcilable or mutually exclusive with codefendants' defenses. *See Collins v. Runnels*, 603 F.3d 1127, 1129 (9th Cir. 2010); *Campbell v. Ward*, 315 F. App'x 82, 86 (10th Cir. 2009); *United States v. Carter*, 760 F.2d 1568, 1575–76 (11th Cir. 1985).

Here, the capital defendants have only presented general allegations of conflicting defenses without specifying how the jury's acceptance of one defense precludes the possibility of acquittal of a codefendant.[41] Therefore, at this stage of the proceedings, the Court finds that severance on this basis is not warranted.

---

codefendant do not necessitate severance. *See United States v. Gray*, 292 F. Supp. 2d 71, 87–88 (D.D.C. 2003) (finding that the defendants' assertions of "some form of an 'it wasn't me' defense" did not constitute an irreconcilable conflict that warranted severance) *aff'd sub nom. United States v. Moore*, 651 F.3d 30 (D.C. Cir. 2011); *United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir. 1990) ("The mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance.") (citing *United States v. Casamento*, 887 F.2d 1141, 1154 (2d Cir. 1989)).

[41] Ofomata does not provide any case-specific information regarding potentially antagonistic defenses among his codefendants. Johnson alleges that "conflicting narratives" between the codefendants will undermine his alibi defense, but he has only presented a general claim that the "contradictions between each defendants' [sic] version of the facts . . . will cause the jury to believe no one." R. Doc. No. 417-1, at 17. George's claim of antagonistic defenses is similarly broad and conclusory, as he simply references his codefendants' anticipated arguments that they are innocent and that another defendant fired the fatal shot. *See* R. Doc. No. 425-1, at 6–8.

## C. Spillover Prejudice

### i.

The defendants also argue that a joint trial will result in prejudicial "spillover effects" from evidence introduced against their codefendants. Ofomata claims, contradicted by the government, that the only direct evidence the government has against him consists of the alleged statements by George to CIs implicating Ofomata in the robbery and murder,[42] and that any other evidence presented against his codefendants will lead the jury to infer "guilt by association."[43] Esteves also asserts that the introduction of evidence against his codefendants, compared to the relative scarcity of evidence against him, will prejudice him at a joint trial.[44] Johnson raises a similar argument, contending that evidence of the criminal histories of George and Ofomata, as well as evidence of his codefendants' alleged involvement in the crime, will taint the jury's determination of Johnson's guilt or innocence and the sentence he should receive.[45] In addition to raising analogous arguments to those of his capital

---

[42] This contention is disputed. At the August 13, 2019 in-chambers conference, the government asserted that it has additional evidence against Ofomata apart from George's alleged statements.

[43] R. Doc. No. 406-1, at 24.

[44] *See* R. Doc. No. 476-1, at 9–10.

[45] R. Doc. No. 417-1, at 13–14. Johnson acknowledges that there is DNA evidence linking him to the vehicle used in the bank robbery and murder of Trochez, although he contests its reliability. *See id.*

The government has informed the Court that it will not present evidence of alleged prior crimes by George and Ofomata during the guilt phase; it will only introduce this evidence at the penalty phase, if that phase occurs. Based on this attestation by the government, the Court notes that Johnson's argument as to the prejudicial effect of introducing evidence of the criminal histories of George and Ofomata at a joint trial is moot with respect to the guilt phase.

codefendants, George also argues that a joint trial with non-capital defendants will imply to the jury that he is "more culpable" than his codefendants who do not face the death penalty, thereby prejudicing the jury's judgment.[46]

A "'spillover effect'—whereby the jury imputes the defendant's guilt based on evidence presented against his co-defendants—is an insufficient predicate for a motion to sever." *United States v. Chapman*, 851 F.3d 363, 379 (5th Cir. 2017) (quoting *United States v. Snarr*, 704 F.3d 368, 397 (5th Cir. 2013)). "A defendant is not entitled to severance just because it would increase his chance of acquittal or because evidence is introduced that is admissible against certain defendants." *Burton v. United States*, 237 F.3d 490, 495 (5th Cir. 2000) (citing *Zafiro*, 506 U.S. at 540)). Broad complaints of the "volume of evidence, the disparity of evidence between defendants, and a generalized spillover effect" do not warrant severance. *Chapman*, 851 F.3d at 380. Instead, the defendant must identify "specific and compelling" prejudice against him that would result from evidence introduced against his codefendants. *See id.*

While separate trials may be necessary when codefendants face a high degree of potential prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure the risk of prejudice." *Zafiro*, 506 U.S. at 539. As the Fifth Circuit has explained, "[i]f the jury can keep separate the evidence that is relevant to each defendant, even if the task is difficult, and render a fair and impartial verdict as to each defendant, a severance should not be granted." *United States v. Ramirez*, 145

---

[46] R. Doc. No. 425-1, at 11–12.

F.3d 345, 355 (5th Cir. 1998) (citing *United States v. Walters*, 87 F.3d 663, 670–71 (5th Cir. 1996)).

As explained previously, the Court will take prophylactic measures to guard against prejudice to individual defendants from the evidence introduced against their codefendants. In particular, instructions to the jury that they must consider the evidence against each defendant separately and individually will alleviate the risk of prejudice.[47] Even in sensitive life-and-death matters, it is presumed that juries will follow the court's instructions and serve as impartial factfinders. *CSX Transp. v. Hensley*, 556 U.S. 838, 841 (2009); *Richardson*, 481 U.S. at 211. In conspiracy cases involving multiple defendants, the preference for joint trials still applies because courts presume that juries are capable of "compartmentaliz[ing] the evidence against each defendant." *Ledezma-Cepeda*, 894 F.3d at 690.

---

[47] As the Fifth Circuit has explained, these instructions should inform the jury: (1) that the jury must consider the evidence separately and independently for each defendant and each charge; (2) that the government's burden was to prove each defendant's guilt beyond a reasonable doubt; (3) that no inferences must be drawn from a defendant's exercise of the right to silence; and (4) that statements by the lawyers, including opening and closing arguments, are not evidence. *Daniels*, 281 F.3d at 178 (citing *Zafiro*, 506 U.S. at 540–41).

Additional measures that the Fifth Circuit has approved include: (1) providing limiting instructions to both potential jurors during voir dire and empaneled jurors during trial, (2) allowing the jurors to take notes, and (3) allowing the jurors to consult photographs of the defendants during trial. *See United States v. Jones*, 303 F.R.D. 279, 287 (E.D. La. 2014) (Morgan, J.) (citing *United States v. Posado-Rios*, 158 F.3d 832, 863–64) (5th Cir. 1998)).

### ii.

The Court is mindful of each defendant's right to an individualized determination of his guilt or innocence by the jury. The Fifth Circuit has made clear, however, that a "quantitative disparity in evidence is 'clearly insufficient in itself to justify severance.'" *Neal*, 27 F.3d at 1045 (quoting *United States v. Harrelson*, 754 F.2d 1153, 1175 (5th Cir.), *cert. denied*, 474 U.S. 1034 (1985)). Furthermore, "[w]hile the district court must guard against undue prejudice, it need not protect conspirators from evidence of their confederates' acts in furtherance of their common illegal aim." *United States v. Posada-Rios*, 158 F.3d 832, 863 (5th Cir. 1998) (quoting *United States v. Manges*, 110 F.3d 1162, 1174–75 (5th Cir. 1997)).

Based on the present record, the Court finds that the spillover prejudice that the defendants allege will arise from a joint trial does not warrant severance at the guilt phase.

### iii.

The Court has concerns, however, about the prejudice that may arise from a joint penalty hearing for the capital defendants, should that phase occur. For example, the government has indicated that it intends to introduce evidence during the penalty phase that George committed an armed bank robbery in 2007 and that Ofomata murdered two people in 2008.[48] In contrast to the serious criminal histories of George and Ofomata, Johnson's record is quite different.[49]

---

[48] *See* R. Doc. No. 424, at 10.
[49] Johnson asserts that he has a "clean record." R. Doc. No. 406-1, at 27.

At a joint penalty hearing, the jury compares each defendant's culpability with that of his codefendants. *See* 18 U.S.C. § 3592(a)(4) (requiring a juror to consider, as a mitigating factor for the death penalty, whether "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death"). The Supreme Court has emphasized that the imposition of the death penalty requires an "*individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant v. Stephens*, 462 U.S. 862, 879 (1983). The jury "must be allowed to consider a defendant's moral culpability and decide whether death is an appropriate punishment for that individual in light of his personal history and characteristics and the circumstances of the offense." *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 263–64 (2007). Because capital cases call for a "greater degree of reliability when the death sentence is imposed," the Supreme Court has emphasized that "an individualized decision is essential." *Lockett v. Ohio*, 438 U.S. 596, 604–05 (1978).

A penalty hearing in which the jury hears evidence against all three capital defendants in one proceeding may pose a high risk of compromising the defendants' right to an individualized sentencing determination. There are numerous concerns that must be weighed. For example, the government has indicated its intent to introduce evidence of other alleged criminal offenses by George and Ofomata, but not by Johnson, at the penalty phase.[50] Consequently, a defendant may be prejudiced by

---

[50] The notice of intent to seek the death penalty against Ofomata lists the alleged murders of two people in 2008 as a non-statutory aggravating factor. *See* R. Doc. No. 149, at 3. The second amended notice of intent against George lists the alleged 2007

unfavorable comparisons with his codefendants, although it may also be argued that a defendant's less serious criminal history may be advantageous to that defendant in a joint penalty hearing, as that defendant may compare favorably to his codefendants. At a joint penalty hearing, a mitigating factor unique to one defendant, such as Johnson's lack of a criminal record, may effectively become an aggravating factor for the other defendants. Conversely, aggravating factors, such as George's alleged 2007 armed robbery and Ofomata's alleged double-homicide, may taint the jury's judgment of Johnson's culpability by thoughts of guilt-by-association.

Although the Court will instruct the jury to consider the mitigating and aggravating factors against each defendant individually, the Court finds that the risk of prejudice in a joint penalty hearing may outweigh the benefits of judicial economy.[51] Because the Court has yet to hear the evidence, and a penalty hearing may not be needed as to any or some of the capital defendants, the Court finds it prudent to rule on the request for individual penalty hearings after the jury reaches a verdict in the guilt phase of the capital defendants' trial.

_____

armed robbery as a non-statutory aggravating factor. *See* R. Doc. No. 409, at 3. The notice of intent against Johnson, by contrast, does not reference any previous offenses allegedly committed by Johnson. *See* R. Doc. No. 148.

[51] A high level of disparity in mitigation evidence between the defendants could dilute one defendant's mitigation evidence in light of another defendant's mitigation evidence. *See United States v. Catalan-Roman*, 376 F. Supp. 2d 96, 105–06 (D.P.R. 2005) (finding that one defendant's "very powerful mitigation regarding his good behavior before and after he was arrested" compared with codefendant's "lack of commensurate mitigation" warranted separate penalty hearings).

### D. Esteves's Right to a Speedy Trial

In this case, the Court has granted four continuances of trial since the defendants were indicted on November 2, 2017. Originally scheduled for January 8, 2018, trial was continued to July 9, 2018, October 9, 2018, January 28, 2019, and November 4, 2019.[52] On July 31, 2019, the capital defendants moved to continue trial to November 2020, which Esteves opposed.[53]

### i.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. While this constitutional right cannot be quantified into a specific number of days or months, the Supreme Court has established a four-factor balancing test to evaluate a defendant's constitutional speedy trial claim. *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). These factors are: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530.

The first factor, the length of the delay, serves as a "screening device" for a full speedy trial analysis under *Barker*. *Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011) (quoting *Nelson v. Hargett*, 989 F.3d 847, 851 (5th Cir. 1993)). "If the delay

---

[52] R. Doc. Nos. 67, 105, 139 & 210.

[53] As discussed previously, Esteves filed his first motion to sever in October 2018 and an opposition to his codefendant's earlier motion to continue in November 2018, arguing that a continuance would violate his rights under the Sixth Amendment and the Speedy Trial Act. *See* R. Doc. Nos. 168 & 177. The Court denied Esteves's first severance motion, *see* R. Doc. No. 209, and granted a continuance to November 4, 2019. *See* R. Doc. No. 210.

reaches the threshold level of one year, it is 'presumptively prejudicial' and requires the court to engage in the speedy trial analysis, balancing the remaining [*Barker*] factors." *United States v. Cardona*, 302 F.3d 494, 497 (5th Cir. 2002) (citing *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993)). "[T]he presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett v. United States*, 505 U.S. 647, 652 (1992).

To overcome the presumption of prejudice, the government must show "that the presumption is extenuated . . . or rebut[] the presumption with evidence." *United States v. Frye*, 489 F.3d 201, 209 (5th Cir. 2007) (citations omitted). If the *Barker* factors "do not weigh so heavily as to justify a presumption of prejudice, then the defendant bears the burden of both establishing actual prejudice and demonstrating that such prejudice is sufficient to outweigh the other three factors." *Id.* (citing *United States v. Serna-Villareal*, 352 F.3d 225, 230 (5th Cir. 2003)).

With respect to the prejudice factor, the Supreme Court has identified three interests that the Sixth Amendment was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532.

### ii.

Under the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.*, which protects the constitutional right to a speedy trial, a defendant's trial must commence within seventy days of his indictment or initial appearance, whichever is later. 18 U.S.C. §

3161(c)(1); *see United States v. Stephens*, 489 F.3d 647, 652 (5th Cir. 2007). Section 3161(h) provides for exclusions from the time calculation within which trial must commence. Such exclusions include continuances granted by the court for the "ends of justice" and delays attributable to a codefendant for whom the time for trial has not run and no motion for severance has been granted. *See Stephens*, 489 F.3d at 652 (citing 18 U.S.C. § 3161(h)).

Delays under the Speedy Trial Act are subject to a "reasonableness inquiry," which examines both the "totality of the circumstances of the case prior to trial" and the "actual prejudice suffered by the [defendant] as a result of the [Section 3161(h)(7)] exclusion." *United States v. Bieganowski*, 313 F.3d 264, 283 (5th Cir. 2002) (quoting *United States v. Franklin*, 148 F.3d 451, 457 (5th Cir. 1998)). Such prejudice may include excessive pretrial incarceration or impairment of the defendant's ability to defend himself. *Id.* (citing *Franklin*, 148 F.3d at 457). In a case with codefendants, courts must weigh these considerations against the "efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." *Id.* (quoting *Franklin*, 148 F.3d at 457).

### iii.

Weighing the *Barker* factors and the reasonableness of delay for the purpose of trying the capital and non-capital defendants jointly, the Court finds that an additional delay of Esteves's trial in order to have Esteves tried with the capital defendants would violate his speedy trial rights under the Sixth Amendment and the Speedy Trial Act.

Esteves has been detained since November 13, 2017.[54] As of his presently scheduled trial date of November 4, 2019, Esteves will have been incarcerated for two years; if he is tried on the capital defendants' new trial date of September 14, 2020, his period of pretrial incarceration will amount to thirty-four months.

Under *Barker*, the length of delay, the reasons for the delay, and Esteves's assertion of his right to a speedy trial weigh toward a presumption of prejudice, which the government has not effectively rebutted. With respect to the second *Barker* factor, the reasons for the delay do not weigh against Esteves.[55] *See Maples v. Stegall*, 427 F.3d 1020, 1026–29 (6th Cir. 2005) (concluding that second *Barker* factor "tip[ped] strongly in [defendant]'s favor" because trial delay, for which defendant was minimally responsible, was primarily caused by codefendant's requests for continuances, as well as the court's "unjustified delay" in ruling on codefendant's late-filed motion).[56] The Court granted previous continuances of the joint trial to allow the capital defendants more time to conduct their mitigation investigations and gather

---

[54] *See* R. Doc. No. 39, at 1 (minute entry for Esteves's arraignment remanding him to the custody of the U.S. Marshal).

[55] As the Supreme Court stated in *Vermont v. Brillon*, "[i]n applying *Barker*, we have asked 'whether the government or the criminal defendant is more to blame for th[e] delay.'" 556 U.S. at 90 (quoting *Doggett*, 505 U.S. at 651). The Court notes that part of the delay in trial is attributable to the nine-month period between the indictment and the government's filing of the notices of intent to seek the death penalty against George, Johnson, and Ofomata.

[56] The Sixth Circuit explained in *Maples*: "In deciding whether delay caused by a co-defendant's motion should count, we will examine whether the defendant objected to the continuance, whether the defendant moved the trial court to comply with speedy trial requirements, whether the defendant moved for release, and whether the defendant's position and interests are aligned with the co-defendant." 427 F.3d at 1029 n.5.

evidence for the penalty phase of the proceedings.[57] The most recent continuance is warranted for the same compelling reasons. Unlike the capital defendants, however, Esteves is not in the process of collecting mitigation evidence, and both his counsel and the government have indicated that they are prepared to go to trial on November 4, 2019. Moreover, as Esteves asserts, the passage of time may impair Esteves's ability to adequately prepare for his defense.[58] Esteves previously raised this concern in November 2018 in his first opposition to a continuance based on his speedy trial rights—the third *Barker* factor—and it is no less salient today.[59]

The government has also not presented any evidence to rebut the presumption of prejudice against Esteves's constitutional right to a speedy trial. The government's argument against severance on speedy trial grounds refers to the Court's December 2018 order denying Esteves's first motion for severance,[60] but the circumstances have changed since then. Further delay of trial for Esteves may intensify the prejudice against him.[61] *See Doggett*, 505 U.S. at 652. When the government chose a capital

---

[57] *See* R. Doc. Nos. 170, at 1; 210, at 5–8. In December 2018, at which point Esteves had been incarcerated for a period of thirteen months, the Court found that his speedy trial claims did not mandate severance from the capital defendants. *See* R. Doc. No. 210, at 12.

[58] *See* R. Doc. No. 476, at 6. As Esteves argued in November 2018 in his opposition to continuing trial, a delay of trial would prejudice his defense due to the potential deterioration of records and witnesses' memories. *See* R. Doc. No. 177, at 2.

[59] *See id.*

[60] *See* R. Doc. No. 507, at 1.

[61] As the Supreme Court explained, "[w]e have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. . . . Imposing those consequences on anyone who has not yet been convicted is serious." *Barker*, 407 U.S. at 532.

path against three of the six defendants charged in the second superseding indictment, it should have anticipated the potential delay-of-trial issues that could negatively affect the non-capital defendants.

Under the Speedy Trial Act, the "totality of the circumstances prior to trial" and the "actual prejudice suffered" by Esteves also support the conclusion that additional delay would not be reasonable. *See Franklin*, 148 F.3d at 457. A joint trial with the capital defendants on September 14, 2020 would extend Esteves's pretrial incarceration by ten months. While a continuance is warranted for the capital defendants to adequately prepare their defenses against the death penalty, Esteves was prepared to go to trial as early as January 28, 2019.[62] Furthermore, the government affirmed that it will be ready for trial on November 4, 2019.

Therefore, the Court finds that considerations with respect to Esteves's right to a speedy trial under the Sixth Amendment and the Speedy Trial Act warrant a trial for Esteves on the presently scheduled trial date of November 4, 2019. Brumfield has requested to be tried with Esteves on November 4, 2019.[63]

---

[62] Esteves's November 2018 memorandum opposing a continuance of the January 28, 2019 trial date stated that he "d[id] not need additional time to prepare for trial." R. Doc. No. 177, at 2.

[63] *See* R. Doc. No. 518. As stated previously, Theophile has not moved for or objected to severance. The Court also notes that Theophile has not raised any objections to being tried with Esteves and Brumfield on November 4, 2019.

### III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the capital defendants' motions for individual trials at the guilt phase and penalty phase of the proceedings are **DENIED**, while preserving the capital defendants' right to re-urge their motions at trial. The capital defendants, George, Johnson, and Ofomata, shall be tried on September 14, 2020.

**IT IS FURTHER ORDERED** that Esteves's motion to sever and Brumfield's request for severance from the capital defendants are **GRANTED**. Esteves, Brumfield, and Theophile shall be tried on November 4, 2019.

New Orleans, Louisiana, September 4, 2019.

                               **LANCE M. AFRICK**
                     **UNITED STATES DISTRICT JUDGE**