**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 17-201** |
| **LILBEAR GEORGE,** | **SECTION I** |
| **CHUKWUDI OFOMATA,** | |
| **& CURTIS JOHNSON, JR.** | |

## ORDER & REASONS

Before the Court is a joint motion[1] by defendants Lilbear George ("George"), Chukwudi Ofomata ("Ofomata"), and Curtis Johnson, Jr. ("Johnson") (collectively, "capital defendants") for an "informative outline" from the government of the statutory intent factors, statutory aggravating factors, and non-statutory aggravating factors that the government intends to present at a penalty phase of trial. The capital defendants also request a pretrial evidentiary hearing to review the government's penalty phase evidence. For the following reasons, the motion and request for a hearing are denied.

**I.**

On February 7, 2019, a grand jury returned a four-count second superseding indictment against the capital defendants and codefendants Jeremy Esteves ("Esteves"), Robert Brumfield, III ("Brumfield"), and Jasmine Theophile ("Theophile") charging them with offenses arising from an armored truck robbery and the senseless killing of Hector Trochez ("Trochez") outside a Chase bank that occurred on December

---

[1] R. Doc. No. 922.

1

18, 2013.[2] Count one charges the capital defendants, as well as Esteves and Brumfield, with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); count two charges the capital defendants, as well as Esteves and Brumfield, with Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; and count four charges George and Theophile with corruptly altering, destroying, mutilating, and concealing a cellular telephone and the information contained thereon, with the intent to impair its integrity or availability for use in a federal grand jury proceeding, in violation of 18 U.S.C. §§ 1512(c)(1) and 2.[3]

Count three charges death-eligible offenses, alleging that the capital defendants, as well as Esteves and Brumfield, aiding and abetting each other, did knowingly use, carry, brandish, and discharge firearms during and in relation to crimes of violence as set forth in count two, and in the course thereof caused the murder of Trochez through the use of firearms in perpetration of a robbery affecting commerce, in violation of 18 U.S.C. §§ 924(c), 924(j), and 2.[4]

The second superseding indictment also includes a notice of special findings as to count three with respect to the capital defendants. The special findings allege that each capital defendant:[5]

    a.  was 18 years of age or older at the time of the offense;

    b.  intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Hector

---

[2] R. Doc. No. 237.
[3] *Id.* at 1–4.
[4] *Id.* at 3.
[5] *Id.* at 7–9.

Trochez died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(C));

c.  intentionally and specifically engaged in an act of violence, knowing that the act or acts created a grave risk of death to a person, other than one of the participants in the offense, such that participation in such act or acts constitutes a reckless disregard for human life, and, Hector Trochez died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(D));

d.  in the commission of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense (Title 18, United States Code, Section 3592(c)(5));

e.  committed the offense as consideration for the receipt and in expectation of the receipt of anything of pecuniary value (Title 18, United States Code, Section 3592(c)(8));

f.  committed the offense after substantial planning and premeditation (Title 18, United States Code, Section 3592(c)(9)).[6]

Pursuant to the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 *et seq.*, on August 31, 2018, the government filed notices of intent to seek the death penalty against George, Johnson, and Ofomata based on the circumstances of the offenses charged in count three of the second superseding indictment.[7] The government did

---

[6] The government has explained that although the grand jury returned a special finding of the "substantial planning and premeditation" statutory aggravating factor under 18 U.S.C. § 3592(c)(9), the government does not intend to prove this statutory aggravating factor at a penalty phase. *See* R. Doc. No. 957, at 21. Instead, the government intends to prove the non-statutory aggravating factor of "Other Criminal Conduct – Substantial Planning and Premeditation for Armed Robbery," which has been noticed in the notices of intent. *Id.* The "substantial planning and premeditation" factor under 18 U.S.C. § 3592(c)(9) is not included in the notices of intent as a statutory aggravating factor.

[7] R. Doc. Nos. 147, 148 & 149. On July 1, 2019, the government filed a second amended notice of intent against George. R. Doc. No. 409.

not file notices of intent against Esteves or Brumfield,[8] and the trial of the capital defendants was severed from that of Esteves, Brumfield, and Theophile on September 4, 2019.[9]

Esteves and Brumfield were tried and convicted in November 2019. After a seven-day trial, the jury found Esteves guilty as to all counts for which he was charged, and it found Brumfield guilty only as to count one.[10]

The trial of the capital defendants has been continued to January 25, 2021.[11] In advance of trial, the capital defendants move the Court for an order directing the government to provide an "informative outline" to "advise the defense of the theories and facts underlying the allegations in the [second superseding] indictment and the [notices of intent]."[12] They present two arguments in support of their request. First, they assert that advance notice of penalty phase evidence is constitutionally necessary for them to have a meaningful opportunity to present their defenses.[13] Second, they argue that advance evidentiary notice will help the Court perform what the capital defendants deem as the Court's "gatekeeping" function under the FDPA— to exclude evidence whose probative value is outweighed by the danger of creating

---

[8] The government also did not file a notice of intent to seek the death penalty against Theophile, as she was not charged with a death-eligible offense.

[9] R. Doc. No. 537. On October 23, 2019, Theophile pled guilty to count four of the second superseding indictment. R. Doc. No. 646; R. Doc. No. 237, at 4. Theophile's sentencing hearing is set for October 14, 2020. R. Doc. No. 848.

[10] R. Doc. Nos. 729 & 731. Esteves's and Brumfield's sentencing hearings are also set for October 14, 2020. R. Doc. No. 792.

[11] R. Doc. No. 935.

[12] R. Doc. No. 922-1, at 7.

[13] *Id.* at 6.

unfair prejudice, confusing the issues, or misleading the jury.[14] *See* 18 U.S.C. § 3593(c). According to the capital defendants, advance evidentiary notice will enable the Court to "screen" the government's evidence to "ensure[] that the government's case for death meets the Eighth Amendment's 'heightened reliability' requirement."[15] Accordingly, they seek an informative outline of the government's theories and evidence as to the factors alleged in support of a sentence of death.

The government argues in response that an informative outline is not warranted because the capital defendants do not have a right to such information.[16] Moreover, the government argues that the capital defendants have already received sufficient notice to prepare their defenses because extensive discovery has already been and will be provided and, significantly, the capital defendants have had access to the government's case during the trial of Esteves and Brumfield.[17] The government also asserts that the Court may properly perform its "gatekeeping" function as to the admissibility of penalty phase evidence without the government providing the capital defendants with an informative outline before trial.[18]

## A.  Capital Defendants' Right to an Informative Outline

To render a criminal defendant eligible for the death penalty under the FDPA, the government must prove beyond a reasonable doubt any one of the statutory intent factors provided in 18 U.S.C. § 3591(a)(2) and any one of the statutory aggravating

---

[14] *Id.* at 7.
[15] *Id.* at 9.
[16] *See* R. Doc. No. 957.
[17] *See id.*
[18] *See id.*

factors provided in 18 U.S.C. § 3592(c). *United States v. Bourgeois*, 423 F.3d 501, 506–07 (5th Cir. 2005). The statutory aggravating factors that the government intends to prove to render a defendant eligible for the death penalty must be charged by indictment, and the failure to do so is constitutional error. *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004); *see Ring v. Arizona*, 536 U.S. 584, 609 (2002).

If the government proves that the defendant is death-eligible, it may then present non-statutory aggravating factors to demonstrate that a sentence of death is justified.[19] *Bourgeois*, 423 F.3d at 507; 18 U.S.C. § 3592(c). The jury may also consider mitigating factors when determining whether a sentence of death should be imposed, 18 U.S.C. § 3592(c), and the defendant may present any information relevant to a mitigating factor. 18 U.S.C. § 3593(c).

The only aggravating factors, both statutory and non-statutory, that a jury may consider with respect to its sentencing decision are those for which notice has been given. 18 U.S.C. § 3592(c). The FDPA requires the government to file, at a reasonable time before trial, a notice of intent to seek the death penalty that informs the defendant of the factors that the government proposes to prove as justifying a sentence of death. 18 U.S.C. § 3593(a). The FDPA does not, however, require the government to provide advance notice of the evidence or the theories that the

---

[19] The term "non-statutory aggravating factor" refers to any aggravating factor that is not specifically described in 18 U.S.C. § 3592. *Jones v. United States*, 527 U.S. 373, 378 n.2 (1999). Non-statutory aggravating factors do not need to be charged by indictment. *Bourgeois*, 423 F.3d at 507.

government intends to present in support of those factors.[20] *United States v. LeCroy*, 441 F.3d 914, 929 (11th Cir. 2006), *cert. denied*, 550 U.S. 905 (2007) (citing *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999)); *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003); *United States v. Lee*, 274 F.3d 485, 495 (8th Cir. 2001). Notice of the government's aggravation evidence is also not required under the Constitution. *LeCroy*, 441 F.3d at 929–30; *Higgs*, 353 F.3d at 325; *Lee*, 274 F.3d at 495; *Gray v. Netherland*, 518 U.S. 152, 167–68 (1996) (explaining that there is no constitutional right to advance notice of the government's evidence in aggravation at a capital sentencing hearing).

Considering the body of case law holding that notice of the government's evidence in support of aggravating factors in the notice of intent is neither statutorily nor constitutionally required, the capital defendants have also not cited any authority demonstrating that such a requirement would apply to evidence in support of statutory intent factors. *See United States v. Agurs*, 427 U.S. 97, 113 n.20 (1976),

---

[20] Numerous district courts have also concluded that capital defendants are not entitled to advance notice of the government's evidence in aggravation. *See, e.g., United States v. Candelario-Santana*, 368 F. Supp. 3d 316, 325 (D.P.R. 2019); *United States v. Montgomery*, 10 F. Supp. 3d 801, 823 (W.D. Tenn. 2014); *United States v. Briseno*, No. 2:11CR77 PPS, 2014 WL 12682281, at *2 (N.D. Ind. Nov. 14, 2014); *United States v. Salad*, 915 F. Supp. 2d 749, 753 (E.D. Va. 2012); *United States v. Eye*, No. 05-00344-01/02-CR-W, 2008 WL 732179, at *2 (W.D. Mo. Mar. 17, 2008); *United States v. Roman*, 371 F. Supp. 2d 36, 44 (D.P.R. 2005); *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 472 (E.D. Pa. 2001).

Additionally, even in cases where the court ordered the government to provide an informative outline of evidence in support of certain aggravating factors, the court agreed that the FDPA does not require the government to provide details of its sentencing phase evidence. *See, e.g., United States v. Solomon*, 513 F. Supp. 2d 520, 535, 538 (W.D. Pa. 2007); *Llera Plaza*, 179 F. Supp. 2d at 472.

*holding modified on other grounds by United States v. Bagley*, 473 U.S. 667 (1985) ("[It] has always been the [Supreme Court's] view that the notice component of due process refers to the charge rather than the evidentiary support for the charge."); *Battle*, 173 F.3d at 1347 ("The government is not required to provide specific evidence in its notice of intent."); *United States v. Cisneros*, 363 F. Supp. 2d 827, 837 (E.D. Va. 2005) ("The government is not required to spell out the evidence it intends to use during sentencing."); *United States v. Nguyen*, 928 F. Supp. 1525, 1552 (D. Kan. 1996) (rejecting the defendant's argument that he was entitled to "full evidentiary detail" of the government's case in support of the death penalty under the FDPA and Constitution because "the indictment and notice of intent to seek the death penalty sufficiently apprise the defendant of the charges he must be prepared to meet").

Notwithstanding, the capital defendants argue that an informative outline from the government is necessary to enable them to prepare their defenses.[21] They assert that their counsel cannot satisfy their professional obligations or "provide the constitutionally required effective assistance . . . without advance notice of the government's evidence."[22]

The Court is not convinced. As this Court has previously explained, the notices of intent against the capital defendants comply with statutory and constitutional requirements, which do not obligate advance notice of the government's penalty phase evidence. *See United States v. Ofomata*, No. 17-201, 2019 WL 527696, at *12

---

[21] *See* R. Doc. No. 922-1, at 5–7.
[22] *Id.* at 8.

(E.D. La. Feb. 11, 2019);[23] *United States v. Johnson*, No. 17-201, 2018 WL 6242491, at *9–10 (E.D. La. Nov. 29, 2018).[24]

Moreover, counsel for the capital defendants have had advance notice of a significant portion of the government's evidence and theories as a result of the seven-day trial of codefendants Esteves and Brumfield, both of whom were charged with the same offenses as the capital defendants. At the November 2019 trial, the government presented extensive evidence and witness testimony to support the charges in the second superseding indictment. The government's case illustrated the alleged role of each defendant—both capital and non-capital—in the December 18, 2013 armored truck robbery and killing of Trochez. Counsel for the capital defendants were present at trial, and they were specifically permitted to electronically take notes in the courtroom.[25] In addition, counsel for the capital defendants have had and continue to have access to trial transcripts. The government has also provided the capital defendants with extensive discovery as required under *Brady* and the Federal Rules of Criminal Procedure.

The capital defendants argue on the one hand that "voluminous discovery" "reinforces" the need for an informative outline.[26] Yet, on the other hand, they argue that they are in need of additional information. Having had access to the evidence at the trial of Esteves and Brumfield, the capital defendants have been made aware of

---

[23] The Court denied Ofomata's previous request for an informative outline. R. Doc. No. 243.

[24] R. Doc. No. 195.

[25] R. Doc. No. 688; R. Doc. No. 681.

[26] R. Doc. No. 922-1, at 10; *see* R. Doc. No. 972, at 9–10.

how the government may use its evidence to support its theory of the case against the capital defendants. Such awareness mitigates the risk of unfair surprise and facilitates the preparation of the capital defendants' defenses.

## B. The "Gatekeeping" Function of the Court

Under the FDPA, the Federal Rules of Evidence do not apply to the admissibility of evidence during the penalty phase, and the Court may exclude evidence if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. 18 U.S.C. § 3593(c). Drawing on the Court's "gatekeeping" function and the Court's inherent authority, the capital defendants argue that an informative outline from the government will enable the Court to "screen" the government's evidence in advance to ensure that the government's case in support of the death penalty meets the Eighth Amendment's "reliability" requirements.[27]

This argument is unavailing. As the Fifth Circuit has explained, "[r]eliable death sentences, under the Eighth Amendment, are those that result from a sentencing scheme that guards against arbitrariness by streamlining discretion at the eligibility stage, and then allows for the exercise of wide-ranging discretion at the selection stage." *United States v. Fields*, 483 F.3d 313, 336 (5th Cir. 2007). Furthermore, "the need for greater reliability in the selection of an appropriate punishment entails not stricter evidentiary rules, but the assurance of 'individualized sentencing' once a defendant is eligible for the death penalty." *Id.* (citing *Woodson v.*

---

[27] *See* R. Doc. No. 922-1, at 7.

*North Carolina*, 428 U.S. 280, 305 (1976)).[28] The capital defendants have not explained how an informative outline from the government would facilitate the jury's determination of an appropriate punishment and assure the "individualized sentencing" that the Eighth Amendment requires.

Moreover, the Court is fully capable of performing its "gatekeeping" function under the FDPA without advance notice from the government of the evidence it intends to present.[29] During a penalty phase, the Court will review the evidence that the government proposes to introduce, and it will not admit any evidence if it is irrelevant, unreliable, or its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

### C. Evidence Requested in Support of the Statutory Intent Factors and Aggravating Factors

Even assuming that the capital defendants had some entitlement to the government's evidence in support of the statutory intent factors and aggravating factors, their arguments still fall short, as discussed below.

---

[28] The Supreme Court explained in *Woodson*: "Because of [the] qualitative difference [between death and imprisonment], there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." 428 U.S. at 298.

[29] The court in *United States v. Briseno* rejected the same argument that the capital defendants raise, stating, "[t]his rationale—that the proffer would be of help to the court—is not a reason at this point in time to order the government to lay out its case, chapter and verse." 2014 WL 12682281, at *2.

###### i.    Statutory Intent Factors

The notices of intent against all three capital defendants allege two statutory intent factors:[30]

> (1) The defendant intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C)).

> (2) The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D)).

The notice of intent against Ofomata alleges two additional statutory intent factors:[31]

> (1) Ofomata intentionally killed the victim (18 U.S.C. § 3591(a)(2)(A)).

> (2) Ofomata intentionally inflicted serious bodily injury that resulted in the death of the victim (18 U.S.C. § 3591(a)(2)(B)).

The capital defendants broadly assert that the statutory intent factors noticed by the government are "lacking in evidentiary detail," and they ask the government to provide an informative outline "describing the general nature of the evidence the government will seek to introduce in support, and any witnesses through whom it intends to offer such evidence."[32] In response, the government contends that the capital defendants have already "previewed" the evidence through the trial of Esteves

---

[30] R. Doc. No. 148, at 1–2; R. Doc. No. 149, at 2; R. Doc. No. 409, at 1–2.
[31] R. Doc. No. 149, at 1–2.
[32] R. Doc. No. 922-1, at 11.

and Brumfield, and no additional information is warranted.[33] The government also stated that it will "likely rely almost exclusively on the evidence presented in the guilt phase to argue the presence of the alleged gateway intent factors."[34]

Considering the discovery that has been provided to the capital defendants and their ability to access transcripts of Esteves and Brumfield's trial, as well as the government's statement as to what evidence it will likely rely upon to argue the statutory intent factors, the Court finds that the capital defendants have received sufficient notice of the statutory intent factors. Their request for an informative outline as to these factors is denied.

### ii.    Statutory Aggravating Factors

The notices of intent allege two statutory aggravating factors against all three capital defendants:[35]

(1) Grave risk of death to additional persons—the defendant in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense (18 U.S.C. § 3592(c)(5)).

(2) Pecuniary gain—the defendant committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value (18 U.S.C. § 3592(c)(8)).

The capital defendants request an informative outline from the government as to each of these factors.

---

[33] R. Doc. No. 957, at 17.
[34] *Id.* at 16–17.
[35] R. Doc. No. 148, at 2; R. Doc. No. 149, at 2; R. Doc. No. 409, at 2.

### a. *Grave Risk of Death to Additional Persons*

With respect to the "grave risk of death to additional persons" factor, the capital defendants argue that the government should identify the additional person or persons to whom this factor refers and the manner in which the capital defendants "knowingly" placed them at grave risk of death.[36] The capital defendants assert that the government's theory concerning this factor has "shifted over time"—though they acknowledge that the change has been "minimal"—and they argue that an informative outline is needed to "commit such information" in order to prevent undue surprise at trial.[37]

The "shift" to which the capital defendants refer is the "person or persons" whom the capital defendants allegedly placed at grave risk of death. During an April 3, 2019 hearing before the United States Magistrate Judge, the government noted that several bullet holes had entered a building/residence adjacent to the Chase bank, suggesting that shots fired by the capital defendants created a danger to other persons.[38] In the government's opposition to the instant motion, the government explained that the additional persons put at risk include the "security guard manning the armored truck with Trochez," as well as individuals in the vicinity of the Chase bank and parking lot where the shooting occurred.[39]

---

[36] R. Doc. No. 922-1, at 12.
[37] R. Doc. No. 972, at 10–11.
[38] R. Doc. No. 315, at 20.
[39] *See* R. Doc. No. 972, at 20.

The Court does not find any alleged "shift" to be a compelling reason for additional evidentiary detail regarding this aggravating factor. The capital defendants have been well-apprised of the nature and circumstances of the offenses surrounding the armored truck robbery and killing of Trochez. They have seen the Chase bank video surveillance footage, and they heard testimony from eyewitnesses—including Trochez's partner, the armored truck security guard who remained inside the truck as the perpetrators directed bullets in her direction. It is abundantly clear from the discovery that has been provided and from the evidence presented at Esteves and Brumfield's trial that persons other than Trochez were placed at risk.[40] The manner in which they were placed at risk is also self-evident. Having reviewed the video of the armed robbery and the evidence presented at the trial of Esteves and Brumfield, the Court considers the capital defendants' argument as to this factor to be frivolous.

### b. Pecuniary Gain

With respect to the "pecuniary gain" factor, the capital defendants argue that the second superseding indictment and notices of intent contain insufficient factual allegations to demonstrate that Trochez's murder, rather than the underlying

---

[40] To the extent that the capital defendants request the names of other individuals who were allegedly placed at risk, information responsive to such request has been provided in the supplemental homicide report of the New Orleans Police Department, which identifies witnesses and other individuals whom law enforcement interviewed. The report also provides the make, model, and license plate numbers of vehicles parked in the Chase bank parking lot and the nearby vicinity after the robbery and shooting occurred.

robbery, was committed for pecuniary gain.[41] They assert that an informative outline is necessary "to determine whether the pecuniary gain aggravator is proper."[42]

As the Fifth Circuit has explained, this factor is limited to situations where pecuniary gain is expected to follow as a direct result of a murder. *United States v. Bernard*, 299 F.3d 467, 483 (5th Cir. 2002). This factor only applies where the jury finds beyond a reasonable doubt that the murder itself was committed "as consideration for, or in the expectation of" pecuniary gain. *Id.*

The evidence that has already been presented supports the propriety of this factor in the notices of intent. As seen in the Chase bank video surveillance footage, three individuals with firearms exited an SUV parked in the bank parking lot as Trochez unloaded containers of currency from the rear of the armored truck. Trochez was shot during a hail of gunfire and fell to the ground. Immediately thereafter, one or more individuals ran to the unloaded currency and re-entered the SUV as it departed the Chase bank. After the offense, as stated in the New Orleans Police Department ("NOPD") supplemental homicide report ("NOPD report"), law enforcement officers were informed that a bag containing $265,000.00 was discovered to be missing.

The evidence at this stage of the case supports the government's theory in support of the pecuniary gain factor and provides sufficient notice to the capital defendants. According to the government, Ofomata and George fired multiple rounds

---

[41] R. Doc. No. 922-1, at 14.
[42] R. Doc. No. 972, at 11.

of gunfire at Trochez, striking Trochez in the head, and George then grabbed a bag of paper currency before entering the vehicle with Ofomata, Johnson, and Esteves.[43] *See United States v. Bolden*, 545 F.3d 609, 616 (8th Cir. 2008) (finding that the pecuniary gain factor applied because the defendant "brought a loaded handgun to the bank planning to confront the bank guard before robbing the bank" and the evidence demonstrated that defendant "shot [the victim] to remove an obstacle to completing the robbery and that his intention was to continue with the robbery once [the victim] had been removed."); *United States v. Roman*, 371 F. Supp. 2d 36, 46 (D.P.R. 2005) (finding that the evidence was sufficient to support the pecuniary gain factor because it showed that the "murder was practically simultaneous with the gain, and the murder clearly facilitated that gain," which would enable a jury to "properly infer that the murder was committed for the express reason to effect the robbery, rather than being incident to, or as an afterthought to the robbery").[44]

Whether each capital defendant "committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value"—and thus, whether this factor justifies a sentence of death—is a finding for the jury to make. *See Bernard*, 299 F.3d at 483. An informative outline as to this factor is not warranted.

---

[43] R. Doc. No. 957, at 2–3.
[44] *United States v. Bernard*, cited by the capital defendants, is clearly distinguishable. Bernard killed the victims *after* they completed the robbery and carjacking in order to prevent the victims from reporting the crimes to the police and to eliminate them as witnesses. *See* 299 F.3d at 472, 483.

### iii.   Non-Statutory Aggravating Factors

The notices of intent allege two non-statutory aggravating factors against all three capital defendants:[45]

    (1) Victim impact—As reflected by the victim's personal characteristics as a human being and the impact of the offenses on the victim and the victim's family, the defendant caused loss, injury, and harm to the victim and the victim's family.

    (2) Other criminal conduct—substantial planning and premeditation for armed robbery—the defendant substantially planned and premeditated the offenses alleged in Count 3 of the second superseding indictment, which required the use of a firearm to facilitate the robbery of armed security guards.[46]

#### a.   Victim Impact

Pursuant to 18 § U.S.C. § 3593(a), the factors for which notice is provided "may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information." Victim impact evidence "inform[s] the sentencing authority about the specific harm caused by the crime in question," which is relevant to the jury's sentencing decision. *Payne v.*

---

[45] The notices of intent against George and Ofomata allege additional non-statutory aggravating factors, which are addressed later in this ruling.

[46] R. Doc. No. 148, at 3; R. Doc. No. 149, at 3; R. Doc. No. 409, at 3–4. The notices of intent against Johnson and Ofomata refer to count three of the superseding indictment, rather than the second superseding indictment, because those notices were filed before the government filed the second superseding indictment. No material changes were made to count three of the second superseding indictment. *See* R. Doc. No. 23; R. Doc. No. 237. The second amended notice of intent against George refers to count three of the second superseding indictment because it was filed after the government filed the second superseding indictment.

*Tennessee*, 501 U.S. 808, 823, 825 (1991); *Bernard*, 299 F.3d at 477. "Victim impact evidence is admissible unless it 'is so unduly prejudicial that it renders the trial fundamentally unfair' in violation of a defendant's Due Process rights.'" *Bernard*, 299 F.3d at 477 (quoting *Payne*, 501 U.S. at 825).

With respect to this factor, the capital defendants request information from the government that "outline[s] the type and scope of the 'loss, injury, and harm' suffered by each victim, his or her family members, and other individuals as relevant, and the 'personal characteristics' of each victim that it intends to prove."[47] The capital defendants also expressed concerns regarding emotional reactions from victim impact evidence.[48]

In response, the government has explained that, notwithstanding the sufficiency of the notices of intent, it intends to call Trochez's family members and possibly also Trochez's friends, associates, and co-workers.[49] According to the government, Trochez's family will testify to their last contacts with Trochez, how they learned of Trochez's fate, the impacts of Trochez's death on their community and workplace, and their efforts to cope with the loss.[50] The government also intends to present testimony from witnesses describing Trochez's life history and personality, based on their interactions with him.[51]

---

[47] R. Doc. No. 922-1, at 18.
[48] *See id.* at 16.
[49] R. Doc. No. 957, at 25–26.
[50] *Id.* at 26.
[51] *Id.*

The Court finds that the capital defendants have received sufficient notice of the victim impact aggravating factor. The government has informed the capital defendants of the categories of victim impact witnesses it may call, and it has described the nature of those witnesses' testimony. In addition, any concern with respect to reaction from emotional testimony is, at this point, premature. The capital defendants have not cited to any specific victim impact evidence or testimony that would be impermissibly inflammatory or emotional.[52] The Court will consider the

---

[52] The capital defendants cite *United States v. Johnson*, 713 F. Supp. 2d 595 (E.D. La. 2010) (Berrigan, J.), in support of their information request relating to victim impact evidence, but the facts of that case are easily distinguished. *See* R. Doc. No. 972, at 13. The court in *Johnson* ordered a new penalty phase hearing because, *inter alia*, the victim's widow testified during the penalty phase holding a teddy bear in her arms that contained an audio tape recording of her murdered husband's voice. *See* 713 F. Supp. 2d at 627–29. The victim's widow also read an emotional written statement that was not disclosed to the defendant before trial, in violation of the court's order requiring the government to proffer the victim impact statement it intended to use. *See id.* Prior to the witness's testimony, the government also did not inform the defendant of the intended use of the teddy bear or the audio recording. *See id.* at 624–25. The teddy bear was dressed as a law enforcement officer, the same occupation as the witness's murdered husband, and the witness "held the teddy bear depiction of her husband within feet" of the jury. *Id.* at 624. During its closing argument, the government highlighted the characterization of the witness's "highly emotional" testimony. *Id.* at 625. Considering the witness's testimony and the statements that the government made in its closing argument, the court found that the government "exposed the jury to clearly inadmissible and highly emotional evidence." *Id.* at 627. The court concluded that the evidence presented "likely tip[ped] the scales into a Due Process violation of fundamental fairness." *Id.* at 624.

Courts have upheld the use of victim impact evidence, even when such evidence had emotional content. *See, e.g.*, *United States v. Chanthadara*, 230 F.3d 1237, 1274 (10th Cir. 2000) ("We are unaware of any case before the Supreme Court or our circuit that has vacated a sentence because the victim impact evidence presented was so unduly inflammatory as to render the proceeding fundamentally unfair."); *United States v. Barnette*, 211 F.3d 803, 818 (4th Cir. 2000) ("No case has come to our attention in which this court or the Supreme Court has vacated a sentence because victim impact evidence violated the limits of due process."); *United States v. McVeigh*, 153 F.3d

testimony presented and exclude any victim impact evidence that is so unduly prejudicial that it renders the trial fundamentally unfair in violation of the capital defendants' Due Process rights.[53]

### b. Substantial Planning and Premeditation

The capital defendants assert that the government should provide additional information explaining "[w]hat acts constituted substantial planning and premeditation, and who committed those acts."[54] However, as the government highlights in its opposition, such information has already been adduced through the testimony of witnesses and evidence presented at Esteves and Brumfield's trial.[55] Based on cell site location data from George's cell phone, which the government presented at that trial, the government argued that George conducted surveillance of the Chase bank for weeks prior to December 18, 2013.[56] The government also presented the testimony of witness Cedric Wade ("Wade"), who stated that Ofomata had placed a duffle bag of firearms and masks in Wade's apartment the night before the robbery and shooting, and that he observed Ofomata retrieve the bag the next

---

1166, 1204 (10th Cir. 1998); *see also Williams v. Chrans*, 945 F.2d 926, 947 (7th Cir. 1991) ("The [prosecution] should not be required to present victim impact evidence or closing arguments that are devoid of all passion.").

[53] The Court can also mitigate against any potential prejudice by instructing jurors "not to be swayed by passion, prejudice or sympathy." *Bernard*, 299 F.3d at 481.

[54] R. Doc. No. 922-1, at 14.

[55] *See* R. Doc. No. 957, at 21–22.

[56] In addition, the NOPD report, which the government provided to the capital defendants, contains a summary of an FBI interview with a confidential source stating that George "may have studied the delivery habits of the armored car service, using [a] rented vehicle possibly black in color."

morning and leave Wade's residence in a Tahoe with Esteves, Johnson, and George inside the vehicle.[57]

The government has presented its theory as to the capital defendants' planning and premeditation for the offenses charged, as well as evidence in support. Sufficient notice as to this factor has been provided.[58]

### c. George

The notice of intent filed against George alleges three additional non-statutory aggravating factors:[59]

(1) Lack of remorse—George has demonstrated a lack of remorse for the capital offenses committed in this case, as indicated by his statements and actions during the course of and following the offenses alleged in the Second Superseding Indictment, including but not limited to one or more of the following:

    a. George stated that if arrested for the offense alleged in count three, he would tell police that he stole the vehicle but gave it to someone else;

    b. George stated that he should have killed someone and then planted his gun on the deceased to divert attention away from himself.

(2) Other criminal conduct—armed robbery. George participated in the armed robbery of an Intertrust armored car at the Capital One Bank, 1100 S. Carrollton Avenue, New Orleans, Louisiana, on December 13, 2007.

(3) Other criminal conduct—drug trafficking with a firearm. George participated in a conspiracy and possession of heroin with intent to

---

[57] *See* R. Doc. No. 721, at 21–27.

[58] The cases cited by the capital defendants with respect to this factor are distinguishable.

[59] R. Doc. No. 409, at 3.

distribute, along with possession of a firearm in furtherance of drug trafficking, in New Orleans, Louisiana, on February 8, 2016.[60]

*Lack of Remorse*

The capital defendants argue that notice of the "lack of remorse" factor has been insufficient because the government "fails to include any specifics of who else was involved in the[] conversations, when they took place, the circumstances, etc."[61] George also asserts that additional evidence of this factor is warranted so that he may move to exclude evidence that would "implicate[] his constitutional right to remain silent."[62]

The Court finds that George is not entitled to an informative outline as to this factor. The notice of intent identifies statements and actions that the government argues are relevant to this factor, and the government has provided George with the NOPD report which, according to the government, contains summaries of witness statements made in relation to the investigation of Trochez's death.[63] The Court has reviewed the NOPD report, and it has found that it includes information from law enforcement interviews with respect to George's alleged actions after the robbery and

---

[60] It does not appear that George's request for an informative outline pertains to this factor, as his request refers only to "unadjudicated alleged criminal acts." R. Doc. No. 922-1, at 19. On February 20, 2019, George pled guilty to this offense, and on June 19, 2019, he was sentenced to 93 months of imprisonment and a three-year term of supervised release. R. Doc. No. 161, *United States v. Lilbear George*, No. 16-29 (E.D. La. Feb. 20, 2019); R. Doc. No. 186, *United States v. Lilbear George*, No. 16-29 (E.D. La. June 19, 2019). Defense counsel for George in this case also represented George in connection with the charges arising from his February 8, 2016 conduct.

[61] R. Doc. No. 922-1, at 15.

[62] *See id.* at 16.

[63] R. Doc. No. 354, 4.

shooting, as well as the date and circumstances under which law enforcement obtained such information. The government has also advised that certain statements were provided by a cooperator and are *Jencks* Act material.[64] It will provide George with those statements prior to trial in accordance with the Fifth Amended Scheduling Order.[65] This cooperator, the government asserts, previously testified at the trial of Esteves and Brumfield.[66]

The Court also does not find, at this point, that George's right to remain silent will be implicated by evidence in support of this factor. The notice of intent specifies the "statements and actions" by George that allegedly support the application of this factor.[67] Furthermore, the government has affirmatively stated that "it does not intend to rely on [George]'s right to remain silent to establish this aggravator."[68] The Court will not permit the introduction of evidence concerning any post-arrest refusals by George to admit his blameworthiness for the offenses charged.

---

[64] R. Doc. No. 957, at 24.

[65] *Id.*

[66] *Id.*

[67] There does not appear to be a constitutional bar to the use of lack of remorse evidence to support an aggravating factor. *See Zant v. Stephens*, 462 U.S. 862, 886 n.22 (1983) ("Any lawful evidence which tends to show the motive of the defendant, his lack of remorse, his general moral character, and his predisposition to commit other crimes is admissible in aggravation, subject to the notice provisions of the statute.") (quoting *Fair v. State*, 245 Ga. 868, 873 (1980))

[68] R. Doc. No. 957, at 24.

*Other Criminal Conduct – 2007 Armed Robbery*

George seeks an informative outline of the "facts upon which [the government] intends to rely to establish" this factor, which is an unadjudicated alleged criminal act.[69]

Considering the notice that George has already received with respect to this factor, the Court finds that additional evidentiary detail is not warranted. George has been informed of the specific act that the government intends to prove, and he has been provided with evidence relating to this allegation. The government previously stated that on June 3, 2019, it provided George with "numerous FBI 302 reports documenting the 2007 Intertrust armored truck robbery,"[70] and on July 2, 2019, it provided George with an NOPD crime scene report of the offense.[71] The government reiterated this fact during a July 3, 2019 hearing before the United States Magistrate Judge.[72] The Court has also reviewed the NOPD report and found that it contains a summary of a 2007 FBI interview in which an unnamed source advised the investigating agents that one of the perpetrators of the 2007 armored truck robbery

---

[69] R. Doc. No. 922-1, at 19.
[70] R. Doc. No. 401, at 4.
[71] R. Doc. No. 934, at 36.
[72] *See* R. Doc. No. 441, at 11 ("[W]e have literally given them every single documentation, which is a 302 that specifically addresses the fact that one of the government's witnesses specifically stated that Lilbear George was involved in the 2007 armed robbery.").

"was named 'Bear.'"[73] According to the government, George "is in possession of all discovery that the government possesses pertaining to the alleged offense."[74]

Accordingly, sufficient notice of this factor has been provided.

### d. Ofomata

The notice of intent filed against Ofomata alleges one additional non-statutory aggravating factor:[75]

(1) Other criminal conduct—murders. Ofomata participated in the murders of two people in New Orleans, Louisiana, in April 2008.

In tandem with George, Ofomata seeks an informative outline of the "facts upon which [the government] intends to rely to establish" this factor, which is an unadjudicated alleged criminal act.[76] As with George, the Court finds that sufficient notice of this factor with respect to Ofomata has been provided. [77] According to the government, on August 6, 2019, it provided Ofomata with discovery relating to such offenses that included crime scene photos, NOPD investigative reports, and "numerous laboratory reports."[78] Ofomata has been sufficiently apprised of the evidence that the government intends to present, and he may prepare his defense accordingly.

---

[73] The second superseding indictment names "Lilbear George, aka 'Bear,' 'Allen Santee.'" R. Doc. No. 237, at 1.

[74] R. Doc. No. 934, at 36.

[75] R. Doc. No. 149, at 3.

[76] R. Doc. No. 922-1, at 19.

[77] The cases that the capital defendants cite in support of their argument are factually distinguishable. *See id.*

[78] R. Doc. No. 934, at 35.

### D. Request for a Pretrial Evidentiary Hearing

The capital defendants have not demonstrated that a pretrial evidentiary hearing to screen the government's evidence is warranted. They have not cited to any specific evidence that would be unreliable or that the Court must review before trial to ensure that its probative value is not outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury.

### II.

For the foregoing reasons,

**IT IS ORDERED** that the joint motion for an informative outline and request for a pretrial evidentiary hearing are **DENIED**.

New Orleans, Louisiana, May 29, 2020.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**