**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                                          No. 17-201

LILBEAR GEORGE,                                      SECTION I
CURTIS JOHNSON, JR.,
& CHUKWUDI OFOMATA

**ORDER & REASONS**

Before the Court is a motion[1] in limine filed by defendants Lilbear George

("George"), Curtis Johnson, Jr. ("Johnson"), and Chukwudi Ofomata ("Ofomata")

(collectively, the "defendants") to exclude certain victim impact evidence and to order

pretrial discovery of all proposed victim impact evidence.  The government opposes

the motion.[2]  For the following reasons, the motion is granted in part and denied in

part, as set forth herein.

**I.**

The Court is familiar with the allegations in the second superseding

indictment.[3]  On August 31, 2018, the government filed its notices of intent to seek

the death penalty as to George, Johnson, and Ofomata.[4]  Each notice of intent states

---

[1] R. Doc. No. 970.
[2] R. Doc. No. 992.
[3] *See generally* R. Doc. No. 237.
[4] *See* R. Doc. Nos. 147–149.  The government filed its amended notice of intent to seek
the death penalty as to George on June 19, 2019, and its second amended notice of
intent to seek the death penalty as to George on July 1, 2019.  *See* R Doc. Nos. 393 &
409.

that the government "believes the circumstances of the offenses charged in Count 3 of the Superseding Indictment are such that in the event of a conviction, a sentence of death is justified . . . , and that [the government] will seek the sentence of death for this offense."[5]  Count three alleges that defendants, along with co-defendants Jeremy Esteves and Robert Brumfield, III, "aiding and abetting each other, did knowingly use, carry, brandish, and discharge firearms during and in relation to crimes of violence . . . , and in the course thereof caused the death of Hector Trochez through the use of firearms," and that the killing is murder in that the murder was committed in perpetration of a robbery affecting commerce.[6]

To be eligible for a capital sentence under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591–3598, "conviction of an offense punishable by death is followed by a separate sentencing hearing which involves both an eligibility and selection phase." *United States v. Ebron*, 683 F.3d 105, 149 (5th Cir. 2012).  To render a defendant eligible for the death penalty, the government must prove beyond a reasonable doubt, § 3593(c), one of four mental states, also known as statutory intent factors, provided in § 3591(a)(2), and at least one of sixteen statutory aggravating factors provided in § 3592(c).[7]  *United States v. Bourgeois*, 423 F.3d 501, 506–07 (5th

---

[5] R. Doc. No. 148, at 1; R. Doc. No. 149, at 1; R. Doc. No. 409, at 1.  The government filed its second superseding indictment on February 7, 2019.  *See* R. Doc. No. 237. No material changes were made to count three.  *Compare* R. Doc. No. 23, at 3, *with* R. Doc. No. 237, at 3.

[6] R. Doc. No. 237, at 3.

[7] The government's notice of intent with respect to Johnson includes four aggravating factors that the government intends to prove at the sentencing hearing to justify a death sentence for Johnson.  *See* R. Doc. No. 148.  The statutory aggravating factors are grave risk of death to additional persons and pecuniary gain; the non-statutory

Cir. 2005).[8]  A jury's finding with respect to any aggravating factor must be unanimous.  § 3593(d).

If a defendant is found to be eligible for the death penalty, then the second or "selection" phase of the sentencing hearing begins, during which the government may attempt to prove the existence of additional, non-statutory aggravating factors in support of its position that the death penalty should be imposed.  *See* § 3593(c); *see also* 18 U.S.C.A. § 3592 ("The jury . . . may consider whether any other aggravating factor for which notice has been given exists.").  Like statutory aggravating factors, non-statutory aggravating factors must be proven beyond a reasonable doubt and found unanimously by the jury.  § 3593(d).  A defendant may attempt during this phase to prove the existence of mitigating factors to dissuade the sentencing jury from

---

aggravating factors are victim impact and other criminal conduct (substantial planning and premeditation for armed robbery).  *Id.*

The government's notice of intent with respect to Ofomata includes five aggravating factors that the government intends to prove at the sentencing hearing to justify a death sentence for Ofomata.  *See* R. Doc. No. 149.  The statutory aggravating factors are grave risk of death to additional persons and pecuniary gain; the non-statutory aggravating factors are victim impact and other criminal conduct, specifically murders and substantial planning and premeditation for armed robbery.  *Id.*

The government's notice of intent with respect to George includes seven aggravating factors that the government intends to prove at the sentencing hearing to justify a death sentence for George.  *See* R. Doc. No. 409.  The statutory aggravating factors are grave risk of death to additional persons and pecuniary gain; the non-statutory aggravating factors are victim impact, lack of remorse, and other criminal conduct, specifically armed robbery, drug trafficking with a firearm, and substantial planning and premeditation for armed robbery.  *Id.*

[8] The government must also prove that the defendant was not younger than 18 years of age at the time of the offense.  18 U.S.C. § 3591(a).

recommending a death sentence. *Id.; see also* § 3592(a) (listing mitigating factors).[9] The jury then weighs the proven aggravating factors against any proven mitigating factors to determine "by unanimous vote" if a death sentence is appropriate. § 3593(e).

For each of the defendants, the government's notice of intent indicates that the government will seek to establish the non-statutory aggravating factor of "victim impact."[10]   The Supreme Court recognized the constitutionality of victim impact testimony in *Payne v. Tennessee*, 501 U.S. 808, 827 (1991) (holding that the Eighth Amendment erects no per se bar to the introduction of victim impact evidence at a capital sentencing hearing) (partially overruling *Booth v. Maryland*, 482 U.S. 496 (1987), and *South Carolina v. Gathers*, 490 U.S. 805 (1989)); *see also United States v. Snarr*, 704 F.3d 368, 402 (5th Cir. 2013) ("Because victim impact evidence relates to the harm caused by the defendant, *Payne* held that it is relevant to the jury's assessment of "the defendant's moral culpability and blameworthiness.") (internal quotations omitted); *United States v. Samps*on, 332 F. Supp. 2d 325, 338 (D. Mass. 2004) (observing that since *Payne*, victim impact testimony is a "regular, legitimate feature" of federal capital cases).

To establish the victim impact aggravator, the jury must find that:

As reflected by the victim's personal characteristics as a human being and the impact of the offenses on the victim and the victim's family, [defendant] caused loss, injury, and harm to the victim and the victim's

---

[9] Unlike aggravating factors, mitigating factors must satisfy the lower preponderance of the evidence standard and need not be found unanimously.  § 3593(d).

[10] *See* R. Doc. Nos. 147, 148, & 409.

family . . . including, but not limited to, the fact that the victim's family suffered severe and irreparable harm.[11]

The evidentiary standards that govern what information goes before a jury during the sentencing phase of a capital trial differ from the evidentiary standards that typically control in criminal cases. § 3593(c). During the sentencing phase, information may be introduced so long as its "probative value is [not] outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." § 3593(c). This "relaxed" evidentiary standard "helps to accomplish the individualized sentencing required by the constitution" by ensuring that the jury "receive[s] sufficient information regarding the defendant and the offense." *Snarr*, 704 F.3d at 399 (rejecting the argument that the FDPA's evidentiary standard "impair[s] the reliability or relevance of information at capital sentencing hearings") (internal citations and quotations omitted). *See Jones,* 119 S.Ct. at 2105 (affirming the constitutionality of evidence "concerning the victim's personal traits and the effect of the crime on her family . . . so long as . . . victim impact factors are used to direct the jury to the individual circumstances of the case").

## II.

Defendants move the Court to: (1) exclude victim impact testimony that offers opinions about the crime, the defendants, the appropriate sentence, or the impact of the court proceedings;[12] (2) limit the scope of victim impact testimony such that it

---

[11] R. Doc Nos. 148, 149 & 409.
[12] R. Doc. No. 970-1, at 3.

provides only a "quick glimpse" of the victim;[13] (3) permit victim impact testimony only from members of Mr. Trochez' family and not from his friends, colleagues, or other non-family members;[14] (4) exclude statements and writings of Mr. Trochez;[15] (5) bar victim impact testimony "regarding Mr. Trochez' gender, race, national origin, or religious beliefs";[16] (6) exclude victim impact testimony that consists of mere emotional pleas;[17] (7) require the government to provide written proposed victim impact statements for review by the Court and parties, as well as an exhibit list and copies of all proposed exhibits, prior to the penalty phase;[18] and (8) hold an evidentiary hearing on the propriety of proposed victim impact testimony.[19]

Defendants state that they make these requests pursuant to the Fifth Amendment Due Process Clause, the Eighth Amendment prohibition on cruel and unusual punishment, and the FDPA "in order to avoid prejudicial error and ensure that [they] receive a fair trial,"[20] cognizant that "[b]y its nature, victim impact testimony risks overwhelming a jury."[21]

The government agrees with defendants "that victim impact witnesses are precluded from offering opinions about the crime, the defendant or the appropriate

---

[13] *Id.* at 2–3.
[14] *Id.* at 4.
[15] *Id.* at 5.
[16] *Id.* at 3.
[17] *Id.*
[18] *Id.* at 6–7.
[19] *Id.* at 1–2.
[20] *Id.* at 7–8.
[21] *Id.* at 2.

sentence" and states that it "intends to instruct the victim witnesses to that effect."[22] But for that exception, the government maintains that the Court should deny "all other aspects" of the defendants' motion.[23]

To set the parameters of permissible victim impact testimony during the penalty phase, the Court will first address the scope of victim impact testimony and argument. Then, the Court will consider appropriate sources of victim impact testimony and, thereafter, appropriate substantive limits on that testimony. Finally, the Court will resolve what procedures should accompany it.

### A. Scope

Defendants assert that "any victim impact testimony or argument should be limited in the manner described in *Payne*"—that is, defendants contend, provided only in order to provide a "quick glimpse" of the victim's life.[24]  *Payne*, 501 U.S. at 822–27. In asserting that the testimony and argument's scope should be so constrained, defendants cite the FDPA's approval of victim impact testimony "concerning the effect of the offense on the victim and the victim's family," § 3593(a), the Fifth Circuit's observation that victim impact testimony should "generally describe the victim's character and the pain the family survivors felt," *United States v. Hall,* 152 F.3d 381, 405 (5th Cir. 1998), *abrogated on other grounds by United States v. Martinez-Salazar,* 528 U.S. 304 (2000), and a cautionary statement by two concurring justices in *Payne* that victim impact testimony is rife with potential to be

---

[22] R. Doc. No. 992, at 1 & 8–9.
[23] R. Doc. No. 992, at 1.
[24] R. Doc. No. 970-1, at 3.

impermissibly inflammatory or overwhelming for a sentencing jury.  *See Payne,* 501 U.S. at 836 (Souter and Kennedy, JJ., concurring).[25]

The government disagrees with defendants' characterization of the permissible scope of victim impact testimony and contends that it should be permitted to offer "broad evidence of the victim's life and characteristics as a person," in order to present a "fulsome" picture of the victim's life, "as well as the impact of his loss on his family and others."[26]  Contrary to defendants' argument that the FDPA limits victim impact evidence, the government highlights the FDPA's catch-all phrase, "and any other relevant information,"  § 3593(a), and cites cases in which seven, *United States v. Barnette*, 211 F.3d 803, 818 (4th Cir. 2000), and eight, *United States v. Lawrence*, 735 F.3d 385, 405 (6th Cir. 2013), individuals offered victim impact testimony.[27] Additionally, the government takes issue with defendants' arguments based on the phrase "quick glimpse."[28]  As such, the government argues, the Court should not limit

---

[25] R. Doc. No. 970-1, at 3.  Defendants contrast the limited testimony that they contend would be permissible with a eulogy, a comparison for which defendants cite a State of Oklahoma criminal appellate case.  *Id.* at 2 (quoting *Malone v. State,* 168 P.3d 185, 210 (Okla. Crim. App. 2007)).

[26] R. Doc. No. 992, at 4 & 1.

[27] *Id.* at 4 (noting that in *Barnett*, the Fourth Circuit affirmed victim impact testimony that "presented stories of the victims' childhoods, family experiences, and the trauma of their deaths, and poems reflecting their deep sadness and regret over their losses").

[28] *Id.* at 4–5.  The government suggests that defendants arrive at their interpretation by reading the phrase out of context and that, understood in proper context, the "quick glimpse" language "concerns the problems with limits on victim-impact evidence mandated by earlier case law," not a boundary the *Payne* Court intended to impose on all victim impact testimony thereafter.  *Id.* at 4.

the government from presenting a "complete exploration of the victim's personal characteristics."[29]

*Payne* resurrected victim impact testimony, reasoning that the victim should not become a "faceless stranger" amidst mitigation evidence. *Payne*, 501 U.S. at 825 (quoting *Gathers*, 490 U.S. at 821) (O'Connor, J., dissenting). *See Black v. Collins*, 962 F.2d 394, 408 (5th Cir. 1992) (explaining that the *Payne* Court justified reinstating victim impact testimony on the ground that "in the same way that a defendant is permitted to introduce relevant mitigating evidence, the State may allow the prosecutor to argue to the jury the human cost of the crime of which the defendant stands convicted") (internal quotations omitted). Furthermore, the FDPA permits the government to present "oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information." § 3593(a). This testimony should be designed to show each victim's "uniqueness as an individual human being . . . ." *Payne*, 501 U.S. at 823; *see also Jones v. United States*, 527 U.S. 373, 399 (1999) ("the victim's individual uniqueness").

Demonstrating the victim's "uniqueness as an individual human being" to a sentencing jury can be accomplished without hazarding the unfairly prejudicial risk of a "fulsome" discussion of the victim's whole "life history" or "complete exploration" of the victim's personality.[30] Capital sentencing is required to focus on facts about

---

[29] R. Doc. No. 992, at 4.
[30] *Id.* at 2 & 4.

the defendant or the circumstances of the offense that make the case stand out among other murder cases. *See Zant v. Stephens*, 462 U.S. 862, 877 (1983). Victim impact testimony is "simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question . . . ." *Payne*, 501 U.S. at 825. § 3593(c). At this phase of the case, the Court can delimit only the outer boundaries of what evidence might be permissible.

## B. Sources of Victim Impact Testimony

### i. Family & Non-Family

Defendants assert that the Court should permit victim impact testimony from "members of Mr. Trochez's family only, and not from friends, colleagues, or other non-family members" and argue that this limitation is the clear command of the FDPA and *Payne*.[31] Defendants also argue, looking to observations made by the Tenth Circuit, that admitting testimony by individuals beyond the victim's family would be "unworkable."[32]

---

[31] R. Doc. Nos. 970-1, at 4 & 1000, at 1.

[32] R. Doc. No. 970-1, at 4. Defendants also argue that "[i]ncluding the community in the victim-impact inquiry is fraught with complication" because "[i]t would involve not just the incremental extension from family to friends (and even to co-workers), but radical change in perspective: replacing a close-in focus on persons closely or immediately connected to the victim with a wide view encompassing generalized notions of social value and loss." R. Doc. No. 970-1, at 5 (quoting *United States v. Fields*, 516 F.3d 923, 946–47 (10th Cir. 2008)). The government counters that the *Fields* passage defendants quote is dicta. *See United States v. Montgomery*, 10 F. Supp. 3d 801, 834 (W.D. Tenn. 2014) (permitting victim impact testimony from the victim's co-worker on the condition that the co-worker address personal, and not utilitarian, loss).

The government counters that the language of *Payne* and the FDPA, § 3593(a), leave room for testimony from individuals not related to the victim and that circuit courts, including the Fifth Circuit, have affirmed victim impact testimony offered by such individuals.[33] The government indicates, in making these arguments, that it may seek to present victim impact testimony from friends and colleagues of the victim, in addition to members of the victim's family.[34]

Defendants are correct that when authorizing victim impact testimony, the Supreme Court and FDPA speak of family. *See, e.g., Payne,* 501 U.S. at 827 ("A State may legitimately conclude that evidence about the victim and about the impact of the murder on the *victim's family* is relevant to the jury's decision as to whether or not the death penalty should be imposed.") (emphasis added); *Jones v. United States*, 527 U.S. 373, 395 (1999) (capital sentencing juries may "consider evidence relating to the victim's personal characteristics and the emotional impact of the murder on the *victim's family* in deciding whether an eligible defendant should receive a death sentence.") (emphasis added); § 3593(a) (stating that the government may introduce

---

[33] R. Doc. No. 992, at 4.  In particular, the government points to the fact that *Payne* quotes Justice White's observation, offered in his dissent in *Booth*, that "the victim is an individual whose death represents a unique loss to society and in particular to his family." *Payne*, 501 U.S. at 825 (quoting *Booth,* 482 U.S. at 517) (White, J., dissenting).  The government concludes from this reference to "society" that victim impact testimony from a broader cohort of individuals is permissible and, indeed, appropriate.  R. Doc. No. 992, at 3.

[34] R. Doc. No. 992, at 10 ("Friends and co-workers should not be prohibited from testifying at trial."); *see also id.* at 2 ("It can be reasonably anticipated based upon the Notice of Intent to Seek the Death Penalty that presentation of such evidence will entail calling, at a minimum, family members, and possibly friends, associates, and co-workers of Trochez.").

victim impact evidence including "oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the *victim's family*, and any other relevant information.") (emphasis added).[35]

However, as the government notes, courts in numerous circuits, and most significantly for the Court, the Fifth Circuit, have admitted victim impact testimony from individuals outside of the victim's family.  S*ee United States v. Bernard*, 299 F.3d 467, 477 (5th Cir. 2002) (victim impact testimony offered by the parents of the victims and by a friend who was also a victim's former co-worker); *Lawrence*, 735 F.3d at 405 (affirming the district court's decision to allow a police officer who served with the victim to testify); *Runyon*, 707 F.3d at 484-85 (affirming the admission of testimony from co-workers, Navy shipmates); *United States v. Whitten*, 610 F.3d 168, 188 (2d Cir. 2010) (holding "the Constitution allows evidence from non-family members about their own grief"); *United States v. Bolden*, 545 F.3d 609, 626–27 (8th Cir. 2008) (upholding the admission of testimony from the victim's "friends, coworkers

---

[35] The facts of *Payne* revolved around family: a mother and one of her two children were murdered, and the victim impact testimony at issue was delivered by a grandmother on behalf of her grandson, the child who survived. *Payne*, 501 S. Ct. at 813–14.   Given this factual landscape, that *Payne* speaks of family does not necessarily mean that its holding that victim impact testimony is constitutional within bounds is limited to family, and the *Payne* Court did not squarely address that question.   Nor does *Jones* state explicitly that victim impact testimony is the exclusive prerogative of family, though it repeatedly references family members offering victim impact testimony. *See Jones*, 527 U.S. at 399.    *Booth* also addressed only family members offering victim impact testimony because of the context of that case.   *See Payne*, 501 U.S. at 817 ("In *Booth,* the defendant robbed and murdered an elderly couple. As required by a state statute, a victim impact statement was prepared based on interviews with the victims' son, daughter, son-in-law, and granddaughter.").

and pastor" about the victim's "relationship with his girlfriend, career aspirations, and the affect [*sic*] of [the victim's] death on his parents."); *United States v. Nelson*, 347 F.3d 701, 712 (8th Cir. 2003) (upholding the admission of testimony from the victim's classmate, teacher, and a friend); *United States v. Battle*, 173 F.3d 1343, 1348–49 (11th Cir. 1999) (approving the admission of victim impact testimony from three prison guards who described the harm caused at the prison by the murder of the victim correctional officer); *United States v. Paul*, 217 F.3d 989, 995 (8th Cir. 2000) (upholding the admission of testimony from the victim's co-worker).

In light of the foregoing caselaw and particularly the Fifth Circuit's holding in *Bernard*, 299 F.3d at 477, the Court is bound to recognize that victim impact testimony from non-family members may be permissible.  Therefore, the Court rejects defendants' argument that, categorically, "law and practicality require the Court to limit victim impact testimony to family members."[36]

However, the ultimate determination of whether a particular individual's testimony should be presented to the jury requires balancing the evidence's probative value against "the danger of creating unfair prejudice, confusing the issues, or misleading the jury."  § 3593(c).  The Court will deny defendants' motion to the extent that it seeks to categorically bar non-family member witnesses from testifying during the penalty phase.[37]  However, the Court reserves to defendants the right to re-urge

---

[36] R. Doc. No. 970-1, at 5.

[37] Notably, even since *Bernard*'s issuance, a majority of Fifth Circuit capital cases have included such testimony only from members of the victim's family.  *See United States v. Davis*, 609 F.3d 663, 683 (5th Cir. 2010) (the victim's daughter); *Griffith v. Quarterman*, 196 F. App'x 237, 245 (5th Cir. 2006) (the victim's brother); *Roberts v.*

their argument at trial that testimony from a particular non-family member is inadmissible under the evidentiary standard set forth in § 3593(c).

### ii. Statements and Writings of the Victim

Defendants argue that the Court should exclude "statements and writings of the victim."[38]  In support of this argument, defendants cite three state court cases and warn of the "special danger" posed by dramatic reenactments of such statements or writings, the emotional toll of which defendants assert may outweigh any probative value.[39]

The government replies that the cases defendants cite are inapposite because they relate to state statutes and different death penalty procedures.[40]  The government further argues that no federal authority bars the introduction of statements or writings from the victim and that such statements and writings may provide benefits relevant to the jury's assessment of the victim impact aggravating factor.[41]

As a general matter, the Court agrees with the government as to the admissibility of a victim's own statements and writings.  The law does not foreclose the government from introducing the victim's own statements and writings.  *See, e.g.,*

---

*Thaler*, 681 F.3d 597, 609 (5th Cir. 2012) (the victim's mother, father, and son); *Hall*, 152 F.3d at 404 (three of the victim's relatives, including her father).

[38] R. Doc. No. 970-1, at 5.

[39] R. Doc. No. 970-1, at 5 (citing *Washington v. State,* 989 P.2d 960, 977–78 (Okla. Crim. App. 1999), *Malone,* 168 P.3d at 209, and *State v. Dehaney,* 803 A.2d 267, 280 (Conn. 2002)).

[40] R. Doc. No. 992, at 10.

[41] *Id.* at 11.

*United States v. Wilson*, 493 F. Supp. 2d 491, 505 (E.D.N.Y. 2007) (allowing the government to introduce a videotape of the victim).  Therefore, defendants' argument that the victim's own writings or statements should be peremptorily and categorically excluded as sources of victim impact testimony fail.  Moreover, given that the government may not choose to introduce any such statement or writing from the victim as victim impact testimony, it would be premature for the Court to rule on the manner in which such writings or statements should be delivered to a sentencing jury. Nevertheless, defendants have the right at trial to object to such evidence on the basis that the particular writings or statements from the victim that the government seeks to produce, or the manner in which the government seeks to present them, are unduly prejudicial.[42]

## C. Substance of Victim Impact Testimony

### i. Victim Impact Testimony Regarding the Victim's Gender, Race, National Origin, or Religious Beliefs

Defendants argue that the Court should "bar victim impact testimony regarding Mr. Trochez's gender, race, national origin, or religious beliefs."[43] According to defendants, prohibition on victim impact testimony "regarding" these topics is commanded by the Eighth Amendment, which "forbids sentencing based on

---

[42] The government proposes that "should the government seek to introduce evidence of such a nature, and should the defense object, the Court [may] make its ruling on a case by case basis, as the Court has already indicated it is inclined to do with penalty phase evidence."  R. Doc. No. 992, at 11.  The Court addresses how it will undertake evidentiary review of victim impact testimony in a subsequent section.
[43] R. Doc. No. 970-1, at 3.

such factors,"[44] and by the FDPA, which "expressly prohibits the jury from considering" those factors as part of its sentencing determination.[45] 18 U.S.C. § 3593(f).  Defendants argue that, therefore, "any evidence concerning a victim's race, color, religious beliefs, national origin or sex must be excluded."[46]

Though recognizing the prohibition in § 3593(f) on a capital jury's consideration of "the race, color, religious beliefs, national origin, or sex of the defendant or of any victim," the government disagrees that this prohibition means that "any evidence concerning" those characteristics must be excluded.   To the contrary, relying on *Bernard*, 299 F.3d at 479, and *United States v. Mikhel*, 889 F.3d 1003, 1053 (9th Cir. 2018), the government argues that "such evidence may be appropriate contextual evidence related to the character of the victim, or his role in the community or relationship to his family."[47]  The government argues that experiences derived from, "[f]or example, speaking hypothetically and not specifically as to Trochez or his family, a victim's story of immigration," may inform an individual's unique character and familial relationships, and it argues that evidence provided in the context of victim impact evidence that touches on the victim's race, color, religious beliefs, national origin, or sex, or "evidence of race, ethnicity or national origin [that] arise[s] in the context of Trochez's unique characteristics, or the impact of loss on his family,"

---

[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] R. Doc. No. 992, at 6.

should not be precluded.[48]   Furthermore, "as a practical matter," the government questions the feasibility of such a prohibition where the jury might, the government speculates, make certain assumptions about the victim in this case based on his name and photographs and the fact that, should his mother testify, it would be in Spanish and through an interpreter.[49]

The FDPA contains a provision designed to protect against discrimination in the assignment of a sentence of death.[50]   Under § 3593(f), after the eligibility determination, but before a jury deliberates as to whether a death sentence is appropriate for a defendant, a court:

> shall instruct the jury that, in considering whether a sentence of death is justified, it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or of any victim and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or of any victim may be.

[48] *Id.* at 8. The government continues, "[t]here are numerous hypotheticals the government could propose which would constitute appropriate contextual evidence, relevant to victim impact, which also touch on a victim's race, religion, color, ethnicity or national origin. Such evidence should not be excluded." *Id.*   In response, defendants take issue with the government's employ of hypotheticals and indicate that reversion to hypotheticals supports their argument that the Court and defendants should review evidence in advance to ensure it is not unduly prejudicial. *See* R. Doc. No. 1000, at 1–2.

[49] Defendants assert that, based on the government's response, "[b]oth sides agree that the government may not offer victim impact testimony discussing (1) the race, color, religious beliefs, national origin, or sex of the defendant or victim . . . but that disagreement continue[s] over the breadth of 'contextual evidence.'" R. Doc. No. 1000, at 1.  It is not clear to the Court that the government committed to not put forward testimony "discussing" those characteristics specified in the FDPA.  *Id.*

[50] 18 U.S.C. § 3593 (titled "special precaution to ensure against discrimination").

§ 3593(f).  If a jury does find that a defendant should be sentenced to death, then each individual member of the jury must again affirm to the court, this time by affixing his or her signature to a certificate, that:

> consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision and that the individual juror would have made the same recommendation regarding a sentence for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or any victim may be.

§ 3593(f).   The Eighth Amendment also prohibits sentencing based on these factors. *See Gathers*, 490 U.S. at 821 (O'Connor and Kennedy, JJ, and Rehnquist, CJ, dissenting) ("It would indeed be improper for a prosecutor to urge that the death penalty be imposed *because of* the race, religion or political affiliation of the victim.") (emphasis added).

Applying § 3593 and the Eighth Amendment, the Fifth Circuit has concluded that although the characteristics specified by the FDPA cannot be the *basis* for the jury's determination, that prohibition does not mean that a sentencing jury cannot be exposed to that information.  *See Bernard*, 299 F.3d at 479 (finding "no error in admitting statements regarding the religious beliefs and activities of the victims"). In *Bernard*, the Fifth Circuit found the fact that the victims were "deeply religious . . . individual[s] who exhibited [their] care for [their] community by religious proselytization" to be an appropriate subject for victim impact testimony, as it was both "relevant to the community's loss at [the victim's] demise" as well as "relevant contextual evidence."  *Id.*  Though the victims' religion would not be a permissible basis for the sentencing jury's determination under § 3593, the Fifth Circuit held that

it was appropriate victim impact testimony because "it would be impossible to describe" the victims' 'uniqueness as individual human beings' without reference to their faith." (citations omitted).

Defendants provide no grounds for distinguishing *Bernard*'s holding about religion in victim impact testimony from any other characteristic specified in § 3593(f) that may be applicable in the instant case, and the government's argument that the logic of *Bernard* carries equally to the other categories is strong.[51] Thus, contrary to defendants' argument, under Fifth Circuit precedent, neither the Eighth Amendment nor § 3593(f)'s commands that the victim or defendant's "race, color, religious beliefs, national origin, or sex" not be the basis for the jury's decision mean that any "evidence concerning" or "regarding" those characteristics must be excluded from testimony.[52]

The Court, therefore, finds that while "race, color, religious beliefs, national origin, or sex" are not an appropriate basis for a sentencing jury's decision, "contextual evidence" within victim impact testimony touching on those factors may nevertheless be admissible if, as with the victims in *Bernard*, it would be "impossible" to describe the victim's "uniqueness as [an] individual human being" absent mention of that characteristic and such testimony is not more prejudicial than probative.[53]

---

[51] *See* R. Doc. No. 992, at 7 ("Although *Bernard* did not specifically address evidence of the race, ethnicity, or national origin of a victim, the logic concerning religious beliefs is perhaps even more applicable here as a person's race, ethnicity or national origin may be difficult to extricate from a discussion of that person's unique characteristics, or their relationship to their family and community.").

[52] R. Doc. No 970-1, at 3.

[53] The Court notes that it is unconvinced by the government's arguments about the ostensible impracticability of limiting victim impact testimony pertaining to "race, color, religious beliefs, national origin, or sex" based on the fact that the victim's

However, prior to the government introducing any such testimony, it shall approach the bench to discuss the same.

### ii. Emotional Pleas

Defendants contend that the Court should exclude testimony "that consists of mere emotional pleas or that offers opinions about the crime, the defendants, the appropriate sentence, or the impact of the court proceedings . . . ." [54] The government agrees.[55]

Because the parties are in agreement, and the government states that it "does not intend to elicit evidence about the effect of the court proceedings on victim impact witnesses," and that it intends to convey to "any victim impact witness, among other admonitions, that [he or she is] not permitted to directly address the defendants

---

mother speaks Spanish and may require a translator, or that the victim's "color, race, or ethnicity may arguably be inferred from his name and photos of him." R. Doc. No 992, at 7–8. Americans look, speak, and are named in all varieties of ways, and no particular life narrative or set of characteristics can necessarily be inferred by a jury about the victim based on his name or mother's language or the pigment of his skin in images that may be introduced into evidence. The Court reaches its conclusion on this issue not because a jury might make "reasonable inferences," but because its conclusion accords with the Fifth Circuit's caselaw. *Id.* at 8.

[54] R. Doc. No. 970-1, at 3.

[55] R. Doc. No. 992, at 8–9. Though the government does not expressly state that it regards "mere emotional pleas" to be inadmissible victim impact testimony, "mere emotional pleas" appears to be an umbrella phrase, *see, e.g., Hain v. Gibson,* 287 F.3d 1224, 1237–38 (10th Cir. 2002), referring to the substantive points that the government does agree with—namely, "that victim impact witnesses are precluded from offering opinions about the crime, the defendant or the appropriate sentence." R. Doc. No. 992, at 1. *See also* R. Doc. No. 1066, at 41 (ordering that counsel not elicit opinion testimony from any witness with respect to what sentence the witness believes should be imposed on a defendant or what impact execution would have on the witness or testimony constituting a plea for mercy for a defendant's life).

during their victim impact testimony," the government contends that an order from the Court is "unnecessary."[56]

Notwithstanding the parties' agreement, the Court will issue an order formalizing this legally correct understanding.[57] *See Bosse v. Oklahoma*, 137 S. Ct. 1, at *2 (2016) (per curiam) (holding that the admission of a victim's family members' characterizations and opinions about the crime, defendant, and appropriate sentence violate the Eighth Amendment); *see also Parker v. Bowersox*, 188 F. 3d 923, 931 (8th Cir. 1999) (holding that family members of the victim may not state "characteristics and opinions about the crime, the defendant, and the appropriate sentence" at the penalty phase).

### D. Victim Impact Testimony Procedures

#### i. Review of Proposed Testimony

Finally, defendants assert that the Court should "require the government to provide written proposed victim impact statements for pretrial review by the Court and parties."[58] Specifically, defendants seek "written victim impact statements from each proposed witness" and "request an exhibit list and copies of all proposed exhibits."[59] Defendants contend that this pretrial, written disclosure of the proposed victim impact testimony is "the only effective means . . . to ensure that the testimony

---

[56] *Id.* at 9.

[57] Excluding purely emotional testimony also comports with the Supreme Court's observation in *Gardner v. Florida*, 430 U.S. 349, 358 (1977), that "[i]t is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion."

[58] R. Doc. No. 970-1, at 6.

[59] *Id.* at 7.

does not stray into improper areas regarding the defendants or the offense (and thereby resulting in a fundamentally unfair trial violating the Eighth Amendment and the Due Process Clause). . . ."[60]  Absent these "disclosures," defendants claim that they may not be able to "adequately challenge" the proposed testimony.[61]  According to defendants, "[i]t is the practice in the majority of federal capital cases for courts to require discovery regarding victim impact evidence prior to commencement of the penalty phase."[62]  Defendants draw the Court's attention to cases that model the pretrial review they seek: *United States v. Henderson*, 485 F. Supp. 2d 831, 849–50 (S.D. Ohio 2007); *United States v. Glover*, 43 F. Supp. 2d 1217, 1221-22 (D. Kan. 1997); and *United States v. Solomon*, 513 F. Supp. 2d 520, 535 (W.D. Pa. 2007).

The government insists that, contrary to defendants' arguments, the fifth amended scheduling order governing the parties' disclosure of witness and exhibit lists to each other suffices and that victim impact witnesses should not be made to disclose written testimony to either the Court or to defendants.[63]  The government cites cases where courts have not mandated such disclosure and it firmly resists the idea that defendants should be able to "edit" victim impact testimony.[64]  Such a

---

[60] *Id.* at 6.
[61] *Id.* at 1.  Defendants state that, as of May 21, 2020, the date on which they filed the instant motion, they had "received no discovery concerning victim impact."  *Id.*
[62] R. Doc. No. 970-1, at 7.
[63] R. Doc. No. 992, at 14.  *See* R. Doc. No. 952, at 3.
[64] R. Doc. No. 992, at 11.  The government also indicates that defendants have previously requested that the Court require the government to turn over additional victim impact discovery, *see* R. Doc. Nos. 838, 840, & 851, and assert that, on those prior occasions, the Court has declined defendants' request.  R. Doc. No. 992, at 11–12 (referencing R. Doc Nos. 271, 934, & 957).  The government also flags that defendants have previously moved to be provided an informational outline of victim

requirement, the government states, would force the proposed witnesses to "relive their pain."[65]

"A "district court has 'considerable discretion in controlling the presentation of the 'information' to the jury in both content and form.'" *Hall,* 152 F.3d at 397; *see also Snarr*, 704 F.3d at 399 (quoting *United States v. McVeigh,* 944 F.Supp. 1478, 1487 (D.Colo.1996)).  Should a court err by permitting the introduction of evidence "that is so unduly prejudicial that it renders the trial fundamentally unfair," the Due Process clause of the Fourteenth Amendment provides the "mechanism for relief." *Payne*, 501 U.S. at 825 (citing *Darden v. Wainwright,* 477 U.S. 168, 179–183 (1986)); *see also Jones,* 527 U.S. at 401-02; *Bernard*, 299 F. 3d. at 477.

As to the disclosure of exhibits, the Court agrees with the government that the fifth amended scheduling order provides defendants sufficient notice.[66]  Under that order, the government must submit its penalty phase witness list and exhibits to defendants by December 28, 2020, and defendants must submit their exhibits to the government by that same date, and their witness list to the government by January 4, 2020.[67]

As to testimony, the Court will not require that the government disclose an outline or draft of proposed testimony to defendants.  Defendants are not entitled to

---

impact testimony, *see* R. Doc. No. 922, which the Court denied.  R. Doc. No. 988.  The government incorporated its responses to those motions to the instant motion.  *See* R. Doc. No. 992, at 12 (incorporating by reference the government's responses in R. Doc. Nos. 271, 934, & 957).

[65] R. Doc. No. 992, at 14.

[66] R. Doc. Nos. 992, at 14 & 952, at 3.

[67] R. Doc. No. 952, at 3.

review victim impact testimony in advance and offer only conclusory reasons as to why the Court should order the government to make this disclosure.[68]  *See United States v. Williams*, No. S100CR.1008, 2004 WL 2980027, at *23 (S.D.N.Y. Dec. 22, 2004) (denying the defendant's motion for pretrial discovery of the government's intended victim impact evidence and noting that "defendant has offered no further authority for why he would be entitled to the detailed statement he seeks here").  Gatekeeping is the Court's prerogative, *see, e.g., United States v. Fell*, 360 F.3d 135, 145 (2d Cir. 2004) ("The FDPA does not eliminate this function of the judge as gatekeeper of constitutionally permissible evidence"), not defendants'.  If defendants disagree with any of the Court's evidentiary determinations, then defendants may object during trial.

### ii. Hearing

Defendants also request that the Court "hold a hearing on the propriety of the government's proffered victim impact evidence and rule on the admissibility of such prior to the commencement of the penalty phase."[69]  Defendants have not demonstrated that a pretrial evidentiary hearing to screen the government's evidence is warranted.

### III.

For the foregoing reasons,

---

[68] *See* R. Doc. No. 970-1, at 6–7.
[69] R. Doc. No. 970-1, at 8.

**IT IS ORDERED** that defendants' motion to limit victim impact testimony is denied at this juncture, reserving to defendants the right to re-urge specific objections to such testimony at trial.

**IT IS FURTHER ORDERED** that defendants' motion with respect to victim impact testimony regarding the victim's gender, race, national origin, or religious beliefs is **DENIED**.   However, prior to the government introducing any such testimony, it shall approach the bench to discuss the same.

**IT IS FURTHER ORDERED** that defendants' motion with respect to preemptively limiting victim impact testimony to members of the victim's family is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion to preemptively preclude statements and writings of the victim is **DENIED**.   However, prior to the government introducing any such statements or writings of the victims, it shall approach the bench for resolution by the Court.

**IT IS FURTHER ORDERED** that defendants' motion to preclude victim impact witnesses from offering opinions about the crime, a defendant, or the appropriate sentence is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion with respect to pretrial review of victim impact testimony is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' request for a hearing on the propriety of the government's proffered victim impact evidence is **DENIED**.

New Orleans, Louisiana, August 7, 2020.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**